KILPATRICK TOWNSEND & STOCKTON LLP
LARRY W. MCFARLAND (State Bar No. 129668)
LMcFarland@kilpatricktownsend.com
DENNIS L. WILSON (State Bar No. 155407)
DWilson@kilpatricktownsend.com
CHRISTOPHER T. VARAS (State Bar No. 257080)
CVaras@kilpatricktownsend.com
9720 Wilshire Blvd PH
Beverly Hills, CA 90212-2018
Telephone: 310-248-3830
Facsimile: 310-860-0363

JOSEPH PETERSEN (*pro hac vice* motion forthcoming)
JPetersen@kilpatricktownsend.com
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7703
Telephone: 212-775-8700
Facsimile: 212-775-8800

Attorneys for Plaintiff
LIONS GATE FILMS INC.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

LIONS GATE FILMS INC.

Plaintiff,

v.

JOHN DOES 1-10 inclusive,

Defendants.

**DECLARATION OF ROBERT WENOKUR IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

I, Robert Wenokur, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declare and state as follows:

1. I am the Executive Vice President, Worldwide Servicing, and Content Protection at Lions Gate Films Inc. ("Lions Gate"). I submit this declaration in support of Lions Gate's application for a temporary restraining order and for a preliminary injunction.

2. The statements made in this declaration are based on my personal knowledge, information provided to me by colleagues or other personnel working under my supervision or, where noted, upon Lions Gate's business records. If called to testify, I would testify as follows:

**My Background**

3. I have worked in various capacities in the entertainment industry since 1986. I joined Lions Gate as Vice President of Post Production in 2005.

4. Since shortly after I joined Lions Gate, a large component of my job responsibilities have included supervising the company's efforts to prevent piracy of Lions Gate's entertainment properties. In connection with my job responsibilities, I routinely work with outside vendors and consultants who specialize in combating online piracy of copyrighted content such as movies, music, software, games and e-books. For example, in connection with my efforts to combat piracy of Lions Gate's entertainment properties, I often engage and work with MarkMonitor, Inc. ("MarkMonitor"), a Thomson Reuters anti-piracy company focusing on, among other things, monitoring online websites and networks for infringing content.

**Lions Gate and The Film**

5.    Lions Gate, together with its various affiliates, is a leading global entertainment company. As set forth in the Annual Report of Lions Gate's parent company, Lions Gate Entertainment Corp., in the last 15 years, Lions Gate and its predecessors and affiliates have distributed films that have earned 77 Academy Award® nominations, won 20 Academy Awards® and have been nominated and won numerous Golden Globe® Awards, Screen Actors Guild Awards®, BAFTA Awards and Spirit Awards.

6.    Most recently, the company has been focused on the impending release of the latest installment of the blockbuster "*The Expendables*" motion picture franchise, *The Expendables 3* (the "Film"). The Film is scheduled to be released on August 15, 2014, a little over two weeks away. Its cast includes some of the largest stars in cinema, including Sylvester Stallone, Jason Statham, Arnold Schwarzenegger, Mel Gibson, Harrison Ford, Wesley Snipes, Dolph Lundgren and Antonio Banderas among many others.

7.    I understand, based upon company press releases and industry sources, that the first two films in this franchise, *The Expendables* and *The Expendables 2,* generated combined worldwide box office revenues of more than $575 million U.S. dollars.

8. Lions Gate has obtained the sole and exclusive right to distribute and exploit the Film in the United States and throughout North America. Lions Gate's exclusive rights in the Film pursuant to this exclusive license include but are not limited to all rights in the United States and throughout North America to exploit the Film by means of direct exhibition in theaters and by means of the Internet, among other rights. A true and correct copy of the agreement granting Lions Gate such rights is attached hereto as **Exhibit A** (portions of the agreement have been redacted to protect certain confidential information in the Agreement).

9. The Film is the subject of a pending application for expedited registration with the United States Copyright Office, which has assigned the application Receipt No. 1-QVTXDT. A true and correct copy of the application and request for special handing is attached hereto as **Exhibit B**.

10. In addition, the screenplay for the Film is the subject of United States Copyright Registration No. PAu003704583, issued on July 10, 2013, which I understand is valid, subsisting and in full force and effect. A true and correct copy of the registration certificate is attached hereto as **Exhibit C.**

11. Given the success of the first two films, Lions Gate anticipates that the Film will be highly successful as well. Accordingly, Lions Gate has invested millions of dollars in terms of acquiring distribution rights to the Film and millions more in connection with marketing and promoting the Film's release.


12. Lions Gate has planned and has already begun to execute an extensive marketing and publicity campaign for the Film including television, radio and print advertising and promotion.

13. Lions Gate has not authorized anyone to distribute the Film within the United States or North America on the Internet or anywhere else prior to the planned release date.

**The Pre-Release Leak**

14. As part of Lions Gate's customary anti-piracy efforts, the company retained outside vendors, including MarkMonitor, to identify and address as appropriate any potential or actual piracy relating to the Film.

15. On or about July 24, 2014, Lions Gate learned that a digital file containing a high quality reproduction of the Film had been uploaded to the Internet without Lions Gate's authorization or consent. While investigations are ongoing, Lions Gate has now come to believe that an individual unlawfully obtained a copy of the Film through fraudulent or otherwise unlawful means. Simply put, this copy of the Film is believed by the company to have been stolen.

16. It is my understanding that only a single digital file containing the Film was stolen, and that every copy of the Film alleged in this complaint (and every copy available anywhere on the Internet) originated from and is a reproduction of that single original digital file.

17. Even a single unauthorized leak of a film property such as the one at issue in this action can have immediate and severe adverse consequences to film distribution companies such as Lions Gate. Digital technology enables exact duplication of copyrighted content at the mere press of a computer keypad or mouse. Accordingly, from a single digital copy of a work thousands upon thousands of near exact copies of the work can proliferate seemingly if not literally overnight. Indeed, only days after the leak at issue was detected copies of the Film in its entirety were available on literally hundreds of websites and my understanding based on information provided to me by MarkMonitor is that as of today the Film has been downloaded more than 2.2 million times.

18. Given the seriousness of the threat posed by the leak of the Film, my team immediately instructed MarkMonitor to devote substantial resources to cataloging all websites and online services offering pirated copies of the Film. Further, we instructed MarkMonitor to follow up with take-down requests to the operators of the sites in question. While many of the sites in question complied with take-down requests, certain sites, including those which are the subject of this action, did not. The accompanying declaration of Edward Cho, MarkMonitor's Director of Global Operations, explains in detail the manner in which the defendants in this action continue to infringe or aid in the infringement of the copyrights in the Film and underlying screenplay and therefore jeopardize the successful launch and

DECLARATION OF ROBERT WENOKUR IN SUPPORT OF APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A
PRELIMINARY INJUNCTION SHOULD NOT ISSUE                                          - 6 -

commercialization of an entertainment product in which Lions Gate has already invested millions of dollars.

**Irreparable Harm**

19.   The unlawful leak of the Film has caused Lions Gate, as the exclusive licensee of the copyright in the Film, irreparable harm.  In distributing and/or aiding the distribution of the Film before its theatrical release the defendants have unlawfully usurped the benefits of first publication that rightfully belong to Lions Gate.

20.   The unlawful distributions impair the marketability of the Film because they provide consumers with an opportunity to view the Film *in its entirety for free before its theatrical release*.  Individuals who view the Film in this manner may not pay for tickets at the box office when the Film is released.  Similarly, such individuals may not purchase or rent copies of the Film when it is released to the home entertainment market after its theatrical run.

21.   Further, the pre-release unlawful distributions impair Lions Gate's ability to control the publicity surrounding the Film.  Lions Gate planned for discussions concerning the Film to coincide with the theatrical release of the Film on August 15, 2014.  Now, many news articles are reporting on the Film weeks before the release and are doing so with reference to the leak and not, as we hoped, with

respect to the content of the Film. True and correct copies of some of the recent press attention garnered by the leak are attached hereto as **Exhibit D**.

22. Finally, the pre-release unlawful distributions impair Lions Gate's relationships with its licensees including theater operators. Specifically, Lions Gate has negotiated licenses with theater operators to exhibit the Film in theaters. Lionsgate relies on the royalties from these licenses to stay in business, just as its licensees rely on ticket sales to stay in business.

23. The leak of the Film at this time threatens to irreparably harm Lions Gate's relationships with its licensees and with potential customers. Those relationships depend on Lionsgate's ability to control when, where and under what conditions the Film is distributed and yet defendants, through their unlawful conduct, are serving to determine when and how the Film is distributed.

24. The harms set forth above cannot be adequately compensated by monetary damages.

25. For all these reasons, Lions Gate has been and will continue to be irreparably harmed by the continued unlawful reproduction and distribution of the Film by the defendants. As such, Lions Gate respectfully requests that this Court issue a temporary restraining order and preliminary injunction restraining defendants from continuing their unlawful conduct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 1, 2014.

Robert Wenokur

DECLARATION OF ROBERT WENOKUR IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

- 9 -