KILPATRICK TOWNSEND & STOCKTON LLP
LARRY W. MCFARLAND (State Bar No. 129668)
LMcFarland@kilpatricktownsend.com
DENNIS L. WILSON (State Bar No. 155407)
DWilson@kilpatricktownsend.com
CHRISTOPHER T. VARAS (State Bar No. 257080)
CVaras@kilpatricktownsend.com
9720 Wilshire Blvd PH
Beverly Hills, CA 90212-2018
Telephone: 310-248-3830
Facsimile: 310-860-0363

JOSEPH PETERSEN (*pro hac vice* motion forthcoming)
JPetersen@kilpatricktownsend.com
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7703
Telephone: 212-775-8700
Facsimile: 212-775-8800

Attorneys for Plaintiff
LIONS GATE FILMS INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| LIONS GATE FILMS INC., | Case No. 2:14-cv-06033-MMM-AGR |
| Plaintiff, | **NOTICE OF LODGING IN SUPPORT OF PRELIMINARY INJUNCTION** |
| v. | |
| JOHN DOES 1-10 inclusive, d/b/a, <limetorrents.com>, <billionuploads.com>, <hulkfile.eu> <played.to>, <swankshare.com> and <dotsemper.com>, *et al.*, | |
| Defendants. | |

1    Plaintiff Lions Gate Films, Inc. hereby lodges with the Court a copy of the

2    following in support of Preliminary Injunction:

3    1.    Attached hereto as **Exhibit A** is the (Proposed) Findings of Fact,

4    Conclusions of Law In Support of Preliminary Injunction; and

5    2.    Attached hereto as **Exhibit B** is the (Proposed) Preliminary Injunction.

6

7

8    DATED:  August 7, 2014          Respectfully submitted,

9                                    KILPATRICK TOWNSEND & STOCKTON
                                     LLP
10

11

12                                   By:    /s/ Dennis L. Wilson
                                            DENNIS L. WILSON
13
                                     Attorneys for Plaintiff
14                                   Lions Gate Films Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| LIONS GATE FILMS INC., | Case No. 2:14-cv-06033-MMM-AGR |
| Plaintiff, | **[PROPOSED] FINDINGS OF FACT, CONCLUSIONS OF LAW** |
| v. | |
| JOHN DOES 1-10 inclusive, d/b/a, <limetorrents.com>, <billionuploads.com>, <hulkfile.eu> <played.to>, <swankshare.com> and <dotsemper.com>, *et al.*, | |
| Defendants. | |

1    This matter came on before the Court on the motion for a preliminary

2  injunction filed by plaintiff Lions Gate Films Inc. ("Lions Gate"). The Court ordered

3  that any opposition to Lions Gate's motion be filed and served on all parties no later

4  than August 6, 2014 at 12 p.m. No oppositions were timely filed. Having reviewed

5  Lions Gate's motion and supporting documents, the Court makes the following

6  findings of fact and conclusions of law:

7                           **FINDINGS OF FACT**

8          1.     The plaintiff in this case is Lions Gate Films, Inc. ("Lions Gate"), a

9  company organized and existing under the laws of the State of Delaware, having its

10  principal place of business at 2700 Colorado Ave., Suite 200, Santa Monica, CA

11  90404. (Complaint, ¶ 5.)

12         2.     The Film at issue in this case is "The Expendables 3," which is the

13  forthcoming third installment in the blockbuster "The Expendables" motion picture

14  franchise. The Film is scheduled for theatrical release in North America on August

15  15, 2014, and has not been released to date. (Declaration of Robert Wenokur

16  ("Wenokur Decl."), ¶ 6.)

17         3.     The cast of the Film includes some of the largest stars in cinema,

18  including Sylvester Stallone, Jason Statham, Arnold Schwarzenegger, Mel Gibson,

19  Harrison Ford, Wesley Snipes, Dolph Lundgren and Antonio Banderas among many

20  others. (Wenokur Decl., ¶ 6.) The first two films in this franchise, "The

21  Expendables" and "The Expendables 2" generated worldwide box office revenues in

22  excess of $575 million. (*Id.*, ¶ 7.)

23         4.     Lions Gate has obtained the sole and exclusive right to distribute and

24  exploit the Film in the United States and throughout North America. (Wenokur

25  Decl., ¶ 8.) Lions Gate's exclusive rights in the Film pursuant to this exclusive

26  license include but are not limited to all rights in the United States and throughout

27  North America to exploit the Film by means of direct exhibition in theaters, by

28  means of the Internet and in all home video media, among other rights. (*Id.*)

5.     The Film is the subject of Copyright Registration No. Pau003734299 (Supplemental Declaration of Christopher Varas, Exhibit A.) In addition, the screenplay for the Film is the subject of United States Copyright Registration No. PAu003704583, issued on July 10, 2013, which is valid, subsisting and in full force and effect. (Wenokur Decl., Exhibit B.)

6.     Given the success of the first two films, Lions Gate anticipates that the Film will be highly successful as well. (Wenokur Decl., ¶ 11.) Accordingly, Lions Gate has invested millions of dollars in terms of acquiring distribution rights to the Film and millions more in connection with marketing and promoting the Film's release. (*Id.*)

7.     Lions Gate has planned and has already begun to execute an extensive marketing and publicity campaign for the Film including television, radio and print advertising and promotion. (Wenokur Decl., ¶ 12.)

8.     Lions Gate has not authorized anyone to distribute the Film within the United States or North America on the Internet or anywhere else prior to the planned release date. (Wenokur Decl., ¶ 13.)

9.     As part of Lions Gate's customary anti-piracy efforts, the company retained outside vendors, including MarkMonitor, to identify and address as appropriate any potential or actual piracy relating to the Film. (Wenokur Decl., ¶ 14.)

10.     On or about July 24, 2014, Lions Gate learned that a digital file containing a high quality reproduction of the Film had been uploaded to the Internet without Lions Gate's authorization or consent. (Wenokur Decl., ¶ 15.)

11.     While investigations are ongoing, Lions Gate has now come to believe that an individual unlawfully obtained a copy of the Film through fraudulent or otherwise unlawful means. (Wenokur Decl., ¶ 15.) Simply put, this copy of the Film is believed by Lions Gate to have been stolen. (*Id.*)

12.     Lions Gate understands that only a single digital file containing the

Film was stolen, and that every copy of the Film alleged in its complaint (and every copy available anywhere on the Internet) originated from and is a reproduction of that single original digital file (the "Stolen Film"). (Wenokur Decl., ¶ 16.)

13. Even a single unauthorized leak of a film property such as the one at issue in this action can have immediate and severe adverse consequences to film distribution companies such as Lions Gate. (Wenokur Decl., ¶ 17.)

14. Digital technology enables exact duplication of copyrighted content at the mere press of a computer keypad or mouse. (Wenokur Decl., ¶ 17.) Accordingly, from a single digital copy of a work thousands upon thousands of near exact copies of the work can proliferate seemingly if not literally overnight. (*Id.*)

15. Only days after the leak at issue was detected copies of the Stolen Film in its entirety were available on literally hundreds of websites. (Wenokur Decl., ¶ 17.) As of July 31, 2014, the Stolen Film had been downloaded more than 2.1 million times worldwide on peer-to-peer networks, including approximately 247,000 downloads in the United States. (Declaration of Edward Cho ("Cho Decl."), ¶¶ 6, 7.)

16. As of July 31, 2014, of the United States peer-to-peer downloads, approximately 21,000 (or 8.5%) were to individuals in the Los Angeles metropolitan area. (Cho Decl., ¶ 7.)

17. The Stolen Film is also available on the Internet for downloading and streaming through websites that do not constitute peer-to-peer networks. (Cho Decl., ¶ 6.) Lions Gate estimates that the Film has been downloaded and/or streamed hundreds of thousands if not millions more times worldwide outside of peer-to-peer networks. (*Id.*)

18. Given the seriousness of the threat posed by the leak of the Stolen Film, Lions Gate immediately instructed MarkMonitor to devote substantial resources to cataloging all websites and online services offering pirated copies of the Stolen Film. (Wenokur Decl., ¶ 18.) Further, Lions Gate instructed MarkMonitor to

1   follow up with take-down requests to the operators of the sites in question. (*Id.*)

2       19.    As of July 31, 2014, MarkMonitor had sent approximately 2,770 take-

3   down requests covering, cumulatively, 10,846 unique host URLs (since a single

4   website often has multiple URLs hosting the Stolen Film, MarkMonitor can and

5   does request that the operator of a single website remove multiple unique host

6   URLs). (Cho Decl., ¶ 9.)

7       20.    In the vast majority of instances the recipients responded by taking

8   down the Stolen Film and otherwise taking steps to avoid the piracy of the Stolen

9   Film. (Cho Decl., ¶ 9.)

10       21.    While many of the sites in question complied with take-down requests,

11   certain sites, including those which are the subject of this action, did not. (Wenokur

12   Decl., ¶ 18.)

13       22.    In particular, Defendants in this case, who operate websites at the

14   domain names <limetorrents.com>, <billionuploads.com>, <hulkfile.eu>,

15   <played.to> and <dotsemper.com>, failed to respond to the demands that

16   MarkMonitor has sent on Lions Gate's behalf. (Cho Decl., ¶¶ 10-18.)

17       23.    On July 25, 2014, MarkMonitor first became aware that the

18   <limetorrents.com> website was disseminating the Stolen Film using the peer-to-

19   peer filesharing "BitTorrent" protocol. (Cho Decl., ¶ 11.)

20       24.    Websites that use the BitTorrent protocol, including

21   <limetorrents.com> host small files called "torrent" files. (Cho Decl., ¶ 11.) Each

22   torrent file contains an instruction set including a unique "hash value" that allows

23   the end user's client program to locate and connect to a group of other users (called

24   a "swarm") who are all simultaneously sharing copies of, in the case of

25   <limetorrents.com>, the Stolen Film with one another. (*Id.*)

26       25.    By downloading one of these torrent files associated with the Stolen

27   Film from <limetorrents.com>, users join a "swarm" where they download parts of

28   the Stolen Film from many different users and also upload to other users parts of the

1    Stolen Film they have already received, until eventually they have reproduced the

2    entire Stolen Film on their own hard drives and, in most cases, have also uploaded

3    all or a substantial part of the Stolen Film to others.  (Cho Decl., ¶ 11.)

4         26.    MarkMonitor, on Lions Gate's behalf, issued take-down requests to the

5    operator of the <limetorrents.com> website on July 26, 30, and 31, but received no

6    response.  (Cho Decl., ¶¶ 17, 18; Ex. G.)

7         27.    On July 25, 2014, MarkMonitor first became aware that the

8    <billionuploads.com> website was hosting copies of the Stolen Film in one or more

9    directories where users could download copies of the Stolen Film directly to their

10   computers.  (Cho Decl., ¶ 12.)

11        28.    MarkMonitor, on Lions Gate's behalf, issued take-down requests to the

12   operator of the <billionuploads.com> website on July 25, 26, 27, 28, 29, 30 and 31,

13   but received no response prior to Lions Gate filing its motion.  (Cho Decl., ¶¶ 17,

14   18; Ex. G.)

15        29.    On July 25, 2014, MarkMonitor first became aware that the

16   <swankshare.com> website was hosting copies of the Stolen Film in one or more

17   directories where users could download copies of the Stolen Film directly to their

18   computers.  (Cho Decl., ¶ 13.)

19        30.    MarkMonitor, on Lions Gate's behalf, issued take-down requests to the

20   operator of the <swankshare.com> website on July 26, 30 and 31, but received no

21   response.  (Cho Decl., ¶¶ 17, 18; Ex. G.)

22        31.    On July 25, 2014, MarkMonitor first became aware that the

23   <hulkfile.eu> website was hosting copies of the Stolen Film in one or more

24   directories where users who signed up for the website's service could download

25   copies of the Stolen Film directly to their computers.  (Cho Decl., ¶ 14.)

26        32.    MarkMonitor, on Lions Gate's behalf, issued take-down requests to the

27   operator of the <hulkfile.eu> website on July 26, 27, 28, 29, 30, and 31 but received

28   no response.  (Cho Decl., ¶¶ 17, 18; Ex. G.)

33. On July 25, 2014, MarkMonitor first became aware that the <played.to> website was hosting copies of the Stolen Film in one or more directories and displaying an embedded viewing window in which users could stream copies of the Stolen Film directly to their screens. (Cho Decl., ¶ 15.)

34. MarkMonitor, on Lions Gate's behalf, issued take-down requests to the operator of the <played.to> website on July 25, 26, 27, 28, 29, 30 and 31, but received no response prior to Lions Gate filing its motion. (Cho Decl., ¶¶ 17, 18; Ex. G.)

35. On July 25, 2014, MarkMonitor first became aware that the <dotsemper.com> website was hosting copies of the Stolen Film in one or more directories where users can download copies of the Stolen Film directly to their computers and displaying an embedded viewing window in which users could stream copies of the Stolen Film directly to their screens. (Cho Decl., ¶ 16.)

36. MarkMonitor, on Lions Gate's behalf, issued take-down requests to the operator of the <dotsemper.com> website on July 26, 27, 28, 29, 30, and 31, but received no response. (Cho Decl., ¶¶ 17, 18; Ex. G.)

37. In distributing and/or aiding the distribution of the Film before its theatrical release, Defendants have unlawfully usurped the benefits of first publication that rightfully belong to Lions Gate. (Wenokur Decl., ¶ 19.)

38. Defendants' unlawful distributions impair the marketability of the Film because they provide consumers with an opportunity to view the Film in its entirety for free before its theatrical release. (Wenokur Decl., ¶ 20.)

39. Individuals who view the Film in this manner may not pay for tickets at the box office when the Film is released later this month. (Wenokur Decl., ¶ 20.)

40. Similarly, such individuals may not purchase or rent copies of the Film when it is released to the home entertainment market after its theatrical run. (Wenokur Decl., ¶ 20.)

41. Further, the pre-release unlawful distributions impair Lions Gate's

1    ability to control the publicity surrounding the Film. (Wenokur Decl., ¶ 21.)

2        42.    Lions Gate planned for discussions concerning the Film to coincide

3    with the theatrical release of the Film on August 15, 2014. (Wenokur Decl., ¶ 21.)

4    Now, many news articles are reporting on the Film weeks before the release and are

5    doing so with reference to the leak and not, as Lions Gate hoped, with respect to the

6    content of the Film. (*Id.*, Ex. D.)

7        43.    The pre-release unlawful distributions impair Lions Gate's

8    relationships with its licensees including theater operators. (Wenokur Decl., ¶ 22.)

9    Specifically, Lions Gate has negotiated licenses with theater operators to exhibit the

10   Film in theaters. (*Id.*) Lions Gate relies on the royalties from these licenses to stay

11   in business, just as its licensees rely on ticket sales to stay in business. (*Id.*)

12       44.    The leak of the Film at this time threatens to irreparably harm Lions

13   Gate's relationships with its licensees and with potential customers. (Wenokur

14   Decl., ¶ 23.)

15       45.    Those relationships depend on Lions Gate's ability to control when,

16   where and under what conditions the Film is distributed and yet Defendants, through

17   their unlawful conduct, are serving to determine when and how the Film is

18   distributed. (Wenokur Decl., ¶ 23.)

19       46.    In sum, Defendants are jeopardizing the successful launch and

20   commercialization of an entertainment product in which Lions Gate has already

21   invested millions of dollars. (Wenokur Decl., ¶ 18.)

22       47.    These harms cannot be adequately compensated by monetary damages.

23   (Wenokur Decl., ¶ 24.)

24                    **CONCLUSIONS OF LAW**

25       1.    The Court has personal jurisdiction over Defendants, each of whom has

26   undertaken intentional and tortious actions expressly aimed at Lions Gate with

27   knowledge that the brunt of the harm from their infringement will be felt by Lions

28   Gate in California where it has its principal place of business. *See, e.g., Panavision*

1    *Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) holding modified by

2    *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th

3    Cir. 2006).  Lions Gate's claims arise directly out of Defendants' forum-related

4    activities, *i.e.* their infringement of Lions Gate's intellectual property rights.  There is

5    also no indication that the exercise of personal jurisdiction over Defendants would be

6    unreasonable.

7        2.      This Court has the authority to "grant temporary and final injunctions on

8    such terms as it may deem reasonable to prevent or restrain infringement of a

9    copyright." 17 U.S.C. § 502(a).

10        3.      A preliminary injunction requires the plaintiff to establish: "(1) a

11    likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving

12    party in the absence of preliminary relief; (3) that the balance of equities tips in favor

13    of the moving party; and (4) that an injunction is in the public interest." *Rovio Entm't*

14    *Ltd. v. Royal Plush Toys, Inc.,* 907 F. Supp. 2d 1086, 1092 (N.D. Cal. 2012) citing

15    *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365 (2008),

16    *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.,* 240 F.3d 832, 839 n. 7 (9th

17    Cir.2001) and *Lockheed Missile & Space Co. v. Hughes Aircraft,* 887 F.Supp. 1320,

18    1323 (N.D.Cal.1995).  All four requirements are satisfied in this case.

19        4.      Lions Gate is likely to prevail on its claim for direct infringement.  To

20    prevail on this claim, Lions Gate must prove:  1) that it is the legal or beneficial

21    owner of a valid copyright; and 2) that the defendant violated at least one of the

22    exclusive rights owned by the plaintiff as the legal or beneficial copyright holder.

23    *See* 15 U.S.C. § 501(b); *see also A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004,

24    1013 (9th Cir. 2001); *D.C. Comics v. Towle*, 989 F.Supp.2d 948, CV 11-3934 RSWL

25    OPX, 2013 WL 541430 (C.D. Cal. Feb. 7, 2013).

26        5.      Lions Gate is likely to establish that the Film is the subject of valid

27    copyright protection.  Motion pictures such as the Film are such quintessentially

28    protectable creative works that the Copyright Act specifically references them in the

1    section specifying the exclusive rights granted to copyright owners. *See* 17 U.S.C. §

2    106. Moreover, the registration for the Film issued by the United States Copyright

3    Office is sufficient to establish the validity of the copyright in the Film for purposes

4    of Lions Gate's motion. *See Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1335

5    (9th Cir. 1995) (granting preliminary injunction), superseded by statute on other

6    grounds as stated in *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1158 (9th Cir. 2011).

7        6.    Lions Gate's exclusive license to distribute and otherwise exploit the

8    Film within the United States and North America in theaters, on the Internet and

9    home video media (among other rights) establishes that Lions Gate is likely to

10   establish its ownership of the copyright in the Film.  "[I]f a copyright owner grants an

11   exclusive license of particular rights, only the exclusive licensee and not the original

12   owner can sue for infringement of those rights." *Righthaven LLC v. Hoehn*, 716 F.3d

13   1166, 1170 (9th Cir. 2013); *see also* 17 U.S.C. § 501(b).

14       7.    Lions Gate is likely to establish the second element of its claim for direct

15   infringement because Defendants are distributing and/or publicly performing the Film

16   in its entirety. *See A&M Records, Inc.*, 239 F.3d at 1014 (users who make digital

17   copies of copyrighted works available for others to download violate the exclusive

18   distribution right); *see also Warner Bros. Entm't v. WTV Systems, Inc.*, 824

19   F.Supp.2d 1003, 1008-1012 (C.D. Cal. 2011) (provider of unauthorized on-demand

20   movie streaming service violated performance right of copyright owners).

21       8.    Lions Gate is likely to prevail on its claim for contributory infringement.

22   To prevail on this claim, Lions Gate must establish both ownership of a valid

23   copyright (which Lions Gate is likely to do for the reasons stated above) and that

24   Defendants intentionally induced, caused or materially contributed to direct

25   infringement by others. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545

26   U.S. 913, 930, 125 S. Ct. 2764, 2776, 162 L. Ed. 2d 781 (2005); *Ellison v. Robertson*,

27   357 F.3d 1072, 1076 (9th Cir. 2004).  Liability for contributory copyright

28

1   infringement attaches to defendants with "*actual knowledge* and those who *have*
2   *reason to know* of direct infringement."  357 F.3d at 1076 (emphasis in original).

3   9.    Lions Gate is likely to establish the "infringement by others" element
4   required for a claim of contributory infringement because although Lions Gate is not
5   currently seeking relief against end users who use Defendants' websites to download,
6   upload or otherwise disseminate the Film, the fact remains that their actions
7   constitute copyright infringement.  *See A&M Records, Inc.*, 239 F.3d at 1014.

8   10.    Lions Gate is also likely to establish that Defendants knowingly induced,
9   caused and/or materially contributed to these end users' infringement by deliberately
10  providing files and/or links that serve no purpose but to facilitate the infringement of
11  Lions Gate's rights.

12  11.    Furthermore, Lions Gate's demand letters to these Defendants establish
13  that Defendants not only "should have known" that they were contributing to the
14  infringement, but also had actual knowledge of the infringement.

15  12.    Lions Gate is likely to prevail on its claim for vicarious infringement.
16  To prevail on this claim, Lions Gate must establish that Defendants have the right and
17  ability to supervise the direct infringement that occurs on and through their websites
18  and also have a direct financial interest in the infringement.  *A&M Records, Inc.*, 239
19  F.3d at 1023.

20  13.    Lions Gate is likely to establish the financial benefit element of this
21  claim.  The Ninth Circuit has held that "financial benefit exists where the availability
22  of infringing material 'acts as a "draw" for customers.'"  *Id.* quoting *Fonovisa, Inc. v.*
23  *Cherry Auction, Inc.*, 76 F.3d 259, 263-64 (9th Cir. 1996).  Given the high profile and
24  intense level of anticipation that has accompanied the Film and the massive levels of
25  infringement that have occurred since the initial theft there is no doubt that the Stolen
26  Film acts as a "draw" that attracts users to Defendants' websites.

27  14.    Second, Defendants have the right and ability to supervise the direct
28  infringement occurring on and through their websites because they have complete

1   control over what content users can access through their websites.  "The ability to

2   block infringers' access to a particular environment for any reason whatsoever is

3   evidence of the right and ability to supervise."  *A&M Records, Inc.* 239 F.3d at 1023

4   citing *Fonovisa*, 76 F.3d at 262.

5        15.    The irreparable harm Defendants are causing to Lions Gate is manifest.

6        16.    Defendants have stripped Lions Gate of exclusive control over one of its

7   most valuable intellectual property assets, including but not limited to depriving

8   Lions Gate of the critical right of first publication and severely disrupting Lions

9   Gate's carefully-planned marketing and publicity campaign for the Film.

10        17.    In so doing, Defendants have also interfered with Lions Gate's

11  relationships with its business partners, damaged Lions Gate's goodwill among

12  consumers by preventing Lions Gate from exercising quality control over the

13  presentation of the Film, and deprived both Lions Gate and many others of revenue

14  that will be impossible to calculate because there is no way of knowing how many

15  people would have paid to see the Film but for Defendants' infringement.

16        18.    The harms that Defendants are causing to Lions Gate are irreparable and

17  justify the imposition of preliminary injunctive relief.  *Warner Bros.*, 824 F.Supp.2d

18  at 1012-14; *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518

19  F.Supp.2d 1197, 1217 (C.D. Cal. 2007).  Indeed, as the court recognized in *Warner*

20  *Bros.*, infringement on the massive scale undertaken by Defendants in this case "even

21  jeopardize[s] the continued existence of Plaintiffs' licensees' businesses"  824

22  F.Supp.2d at 1013.

23        19.    Defendants' infringement also causes irreparable harm to Lions Gate

24  because their unchecked dissemination renders the Film (and other Lions Gate

25  properties that are high profile targets for similar leaks) "vulnerable to continuing

26  infringement on an enormous scale" that cannot be redressed with damages.  *Metro-*

27  *Goldwyn-Mayer Studios*, 518 F.Supp.2d at 1217.

28

20.     The balance of equities tips sharply in Lions Gate's favor.  The Ninth Circuit has long held that a defendant "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities. 'Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense "merits little equitable consideration[.]"'" *Triad Sys. Corp.*, 64 F.3d 1330 at 1338 quoting *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir.1988).

21.     An injunction is in the public interest.  "'[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work.'" *Warner Bros.*, 824 F.Supp.2d at 1015, quoting *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1255 (3rd Cir.1983).  As a court in this District observed in another case involving the unauthorized online dissemination of copyrighted works, any interest the public may have "in receiving copyrighted content for free is outweighed by the need to incentivize the creation of original works." *Metro-Goldwyn-Mayer Studios*, 518 F.Supp.2d at 1222.

22.     It is appropriate to dispense with the filing of a bond.  It is well established in the Ninth Circuit that "Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any.*' " *Jorgensen v. Cassiday,* 320 F.3d 906, 919 (9th Cir. 2003) quoting and adding emphasis to *Barahona–Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir.1999).  In particular, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen*, 320 F.3d at 919.  The Court finds no realistic likelihood that a preliminary injunction will harm Defendants.

23.     An order preventing the transfer of Defendants' assets is appropriate.  Such a preliminary asset freeze is "authorized by the district court's inherent

1    equitable power to issue provisional remedies ancillary to its authority to provide

2    final equitable relief." *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.,* 970 F.2d

3    552, 559 (9th Cir. 1992); *see also Federal Trade Commission v. United States Oil &*

4    *Gas Corp.*, 748 F.2d 1431, 1433-1434 (11th Cir. 1984) (District Court may exercise

5    its full range of equitable powers, including a preliminary asset freeze, to ensure that

6    permanent relief will be possible).  Where profits are available as a final remedy—as

7    they are under 17 U.S.C. § 504 – a preliminary asset freeze is an appropriate

8    provisional remedy.  *See, e.g., Datatech Enters. LLC v. FF Magnat Ltd.*, 2012 WL

9    4068624, at *4-5 (N.D. Cal. Sept. 14, 2012) (granting preliminary injunction

10   including an asset freeze in lawsuit for copyright infringement).

11       24.    Such an asset freeze is appropriate in this case to preserve Lions Gate's

12   right to such recovery against Defendants, who are trafficking in the Stolen Film and

13   can be expected to secret assets to insulate them from judgment.

14

15       In accordance with these findings of fact and conclusions of law, the Court

16   hereby GRANTS Lions Gate's motion and enters the PRELIMINARY

17   INJUNCTION entered concurrently herewith.

18

19   Entered this _____ day of _____, 2014 at _____.

20

21

22                                                    _____

23                                                    Hon. Margaret M. Morrow
                                                     United States District Judge
24

25

26

27

28

# EXHIBIT B

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| LIONS GATE FILMS INC., | Case No. 2:14-cv-06033-MMM-AGR |
| Plaintiff, | **[PROPOSED] PRELIMINARY INJUNCTION** |
| v. | |
| JOHN DOES 1-10 inclusive, d/b/a, <limetorrents.com>, <billionuploads.com>, <hulkfile.eu> <played.to>, <swankshare.com> and <dotsemper.com>, *et al.*, | |
| Defendants. | |

1    This matter came on before the Court on the motion for a preliminary

2    injunction filed by plaintiff Lions Gate Films Inc. ("Lions Gate").  The Court ordered

3    that any opposition to Lions Gate's motion be filed and served on all parties no later

4    than August 6, 2014 at 12 p.m.  No oppositions were timely filed.  Based on the

5    findings of fact and conclusions of law entered concurrently herewith, the Court

6    hereby ORDERS AS FOLLOWS:

7         1.    Each and every one of the Defendants and their officers, agents,

8    servants, employees, and attorneys, and all other persons who are in active concert or

9    participation with them, including but not limited to persons and entities providing

10   any services to or in connection with the domain names <limetorrents.com>,

11   <billionuploads.com>, <hulkfile.eu> <played.to>, <swankshare.com> and/or

12   <dotsemper.com> or the websites to which any of those domain names resolve are

13   PRELIMINARILY ENJOINED from:

14        a.    Hosting, linking to, distributing, reproducing, performing, selling,

15              offering for sale, making available for download, streaming or making

16              any other use of any copy or copies of the Film or any portion thereof in

17              any form;

18        b.    Taking any action that induces, causes or materially contributes to the

19              direct infringement of Lions Gate's rights in the Film by any third party,

20              including without limitation hosting, linking to or otherwise providing

21              access to any torrent files, trackers, links (including without limitation

22              magnet links), hash values or other instruction sets of any kind that

23              enable users to locate or access any "swarm" or other location where any

24              copy or copies of the Film or any portion thereof are being distributed,

25              reproduced, performed or otherwise exploited in any form;

26        c.    Otherwise infringing Lions Gate's rights in the Film in any manner,

27              whether directly, contributorily, vicariously or in any other way; and

28

1       d.     Transferring or performing any function that results in the transfer of the

2            registration of the domain names <limetorrents.com>,

3            <billionuploads.com>, <hulkfile.eu> <played.to>, <swankshare.com>

4            and <dotsemper.com>, or any of them, to any other registrant or

5            registrar.

6       2.     Lions Gate is not required to post any bond prior to the issuance of this

7  Preliminary Injunction.

8       3.     All banks, savings and loan associations, payment processors or other

9  financial institutions, payment providers, third party processors and advertising

10  service providers of Defendants or any of them must, upon receiving notice of this

11  Order, immediately locate all accounts connected to Defendants or to

12  <limetorrents.com>, <billionuploads.com>, <hulkfile.eu> <played.to>,

13  <swankshare.com> and/or <dotsemper.com> and immediately cease transferring or

14  disposing of any money or other assets residing in such accounts, cease allowing such

15  funds to be transferred or withdrawn, and cease allowing any diminutions to be made

16  by Defendants from such accounts pending further order of this Court.

17       4.     In light of counsel's efforts to locate and identify defendants as well as

18  the urgency necessitated by Lions Gate's application for a temporary restraining

19  order and preliminary injunction, the court approves service by email of the

20  temporary restraining order and order to show cause why the court should not issue a

21  preliminary injunction. The court makes no determination herein whether service by

22  email of the complaint and summons is appropriate under Rule 4. Lions Gate is

23  directed to serve limetorrents.com at the email address kof_javed@hotmail.com as

24  well as by mail at its physical address in Pakistan. Lions Gate is directed to serve

25  billionuploads.com at dmca@billionuploads.com and at admin@billionuploads.com.

26  It is directed to serve hulkfile.eu at abuse@hulkfile.com. It is directed to serve

27  played.to by service on its counsel John A. Arsenault by electronic and postal mail. It

28  is directed to serve swankshare.com at swankshare@gmail.com as well as by mail at

its physical address in Singapore. Finally, it is directed to serve dotsemper.com at dotsemper.com@domainbyproxy.com.  Lions Gate's obligations under this Paragraph 4 shall be satisfied upon transmission of the notices by email and postal mail as provided herein. Lions Gate has no obligation to confirm that the notice is successfully delivered to any Defendant. Lions Gate shall file a declaration attesting to its compliance with this Paragraph 4 no later than _____.

5.      Lions Gate shall include a copy of this Order in any correspondence it sends to any person or entity it believes is acting in active concert or participation with any of the Defendants, including without limitation any person or entity who provides hosting services for one or more of the websites specified in this Order. Lions Gate may apply to this Court for modifications of this Preliminary Injunction as appropriate, including without limitation to request that the terms of this Preliminary Injunction be extended to such further and additional domain names as Lions Gate may discover are being used by any or all of the Defendants or their officers, agents, servants, employees, attorneys, or anyone in active concert or participation with any of them to infringe any of Lions Gate's rights.


IT IS SO ORDERED.


Entered this _____ day of _____, 2014 at _____.



_____
Hon. Margaret M. Morrow
United States District Judge

PROOF OF SERVICE

I, the undersigned say, I am and was at all times herein mentioned a resident of the County of Los Angeles, over the age of eighteen (18) years and not a party to the within action or proceeding.  My business address is 9720 Wilshire Boulevard, Penthouse Suite, Beverly Hills, California 90212 and I am employed in the offices of Kilpatrick Townsend & Stockton LLP by a member of the Bar of this Court at whose direction the service mentioned herein below was made.

On August 7, 2014, I served the following document(s):

**NOTICE OF LODGING IN SUPPORT OF PRELIMINARY INJUNCTION**

upon ***defendants*** in this action by means of electronic delivery to the following email addresses:

> kof_javed@hotmail.com;
> dmca@billionuploads.com;
> admin@billionuploads.com;
> abuse@hulkfile.com;
> John.arsenault@frontrangelegalservices.com
> swankshare@gmail.com;
> DOTSEMPER.COM@domainsbyproxy.com
> freshwrap@hotmail.com

As of the filing of this declaration, I have not received any electronic message or other indication that the transmissions were unsuccessful.

Also on August 7, 2014, I caused an envelope containing a true copy of the above documents, with postage thereon fully prepaid, to be placed in the United States mail at Beverly Hills, California, for international service upon the below-referenced defendants with addresses as follows:

Lucas Lim d/b/a <swankshare.com>
Blk 812 Tampines Ave. 4
#06-219
Singapore 520812
Singapore

Muhammad Javed Ashraf d/b/a <limetorrents.com>
Iwebspro
428-N, Samanabad
Lahore
Punjab 54700
Pakistan

| John Arsenault<br>Wessels & Arsenault LLC<br>1333 West 120th Avenue Suite 219<br>Westminster, CO 80234-2713 | Counsel for dmca@played.to |
| --- | --- |

   I am readily familiar with the practice of Kilpatrick Townsend & Stockton LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after deposit for mailing in affidavit.

   I declare under penalty of perjury that the foregoing is true and correct. Executed on August 7, 2014 at Beverly Hills, California.

Patricia Cloutier