KILPATRICK TOWNSEND & STOCKTON LLP
LARRY W. MCFARLAND (State Bar No. 129668)
LMcFarland@kilpatricktownsend.com
DENNIS L. WILSON (State Bar No. 155407)
DWilson@kilpatricktownsend.com
CHRISTOPHER T. VARAS (State Bar No. 257080)
CVaras@kilpatricktownsend.com
9720 Wilshire Blvd PH
Beverly Hills, CA 90212-2018
Telephone: 310-248-3830
Facsimile: 310-860-0363

JOSEPH PETERSEN (admitted *pro hac vice*)
JPetersen@kilpatricktownsend.com
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7703
Telephone: 212-775-8700
Facsimile: 212-775-8800

Attorneys for Plaintiff
LIONS GATE FILMS INC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LIONS GATE FILMS INC.,<br><br>Plaintiff,<br><br>v.<br><br>AHMED SALEH, an individual; AMIEL ELBAR, an individual; MUHAMMAD JAVED ASHRAF, an individual; TOM MESSCHENDORP, an individual; JEROME GILLAN, an individual; LUCAS LIM, an individual; and JOHN DOES 1-4, inclusive..<br><br>Defendants. | CASE NO. 2:14-cv-06033-MMM-AGR<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) DIRECT FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 501,** *et seq.***);**<br><br>**(2) CONTRIBUTORY FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 501,** *et seq.***);**<br><br>**(3) VICARIOUS FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 501,** *et seq.***); and**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Pursuant to Federal Rule of Civil Procedure 15, Plaintiff Lions Gate Films Inc. ("Lions Gate" or "Plaintiff"), through its attorneys, complaining of Defendants Ahmed Saleh, Amiel Elbar, Muhammad Javed Ashraf, Tom Messchendorp, Jerome Gillan, Lucas Lim and JOHN DOES 1-6 (collectively "Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1. This lawsuit arises from Defendants' willful and malicious violation of the federal Copyright Act (17 U.S.C. §§ 101, *et seq.*).

2. This Court has subject matter jurisdiction pursuant to 17 U.S.C. § 501, 28 U.S.C. § 1331, and § 1338(a).

3. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

4. Lions Gate is informed and believes and on that basis alleges that personal jurisdiction in this District is proper because each Defendant, without consent or permission of Plaintiff, distributed and offered to distribute over the Internet copyrighted works for which Plaintiff has exclusive rights. On information and belief, such unlawful distribution occurred in every jurisdiction in the United States, including this one. In addition, each Defendant has directed tortious acts at Lions Gate in this District and has committed tortious acts that each Defendant knew or should have known would cause injury to Lions Gate in this District.

## THE PARTIES

5. Lions Gate is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 2700 Colorado Ave., Suite 200, Santa Monica, CA 90404.

6. Lions Gate is informed and believes that defendant Ahmed Saleh is an individual residing in Egypt.

7. Lions Gate is informed and believes and on that basis alleges that defendant Amiel Elbar is an individual residing in Israel.

8. Lions Gate is informed and believes and on that basis alleges that

defendant Muhammad Javed Ashraf is an individual residing in Pakistan.

9. Lions Gate is informed and believes that defendant Tom Messchendorp is an individual residing in Spain.

10. Lions Gate is informed and believes that defendant Jerome Gillan is an individual residing in the State of Ohio.

11. Lions Gate is informed and believes that defendant Lucas Lim is an individual residing in Singapore.

12. Lions Gate is currently unaware of the identities of defendants John Does 1-4 and therefore sues these defendants by such fictitious acronyms. Lions Gate will seek lave to amend its complaint to name these defendants when their identities and locations have been ascertained.

**LIONS GATE'S RIGHTS AND DEFENDANTS' UNLAWFUL CONDUCT**

13. The work at issue in this lawsuit is the forthcoming third installment in the blockbuster "The Expendables" motion picture franchise, "The Expendables 3" (the "Film"). The Film had its theatrical release in North America on August 15, 2014.

14. The cast of the Film includes Sylvester Stallone, Jason Statham, Arnold Schwarzenegger, Mel Gibson, Harrison Ford, Wesley Snipes, Dolph Lundgren and Antonio Banderas among many others. The first two films in this franchise, "The Expendables" and "The Expendables 2", generated worldwide box office revenues in excess of $575 million.

15. The Film is the subject of United States Copyright Registration No. PAu003734299, issued on July 29, 2014. In addition, the screenplay for the Film is the subject of United States Copyright Registration No. PAu003704583, issued on July 10, 2013, which is valid, subsisting and in full force and effect. The Film is a derivative work based on the registered screenplay.

16. Lions Gate has been licensed the sole and exclusive right to distribute and exploit the Film in the United States and throughout North America. Lions

1  Gate's exclusive rights in the Film pursuant to this exclusive license include but are
2  not limited to all rights in the United States and throughout North America to exploit
3  the Film by means of direct exhibition in theaters, by means of the Internet and in all
4  home video media, among other rights.

5      17.   On or about July 24, 2014, Lions Gate learned that a digital file
6  containing a high quality reproduction of the Film had been stolen and uploaded to
7  the Internet without Lions Gate's authorization or consent. Lions Gate is informed
8  and believes and on that basis alleges that only a single digital file containing the
9  Film was stolen, and that every copy of the Film alleged in its original complaint
10 (and every copy available anywhere on the Internet as of the date Lions Gate filed
11 its original complaint) originated from and is a reproduction of that single original
12 digital file (hereinafter the "Stolen Film"). Accordingly, Lions Gate's claims
13 against Defendants arise out of the same transaction, occurrence, or series of
14 transactions or occurrences.

15     18.   Lions Gate is informed and believes and on that basis alleges that
16 Defendants herein have distributed, reproduced, performed and otherwise exploited
17 the Stolen Film in violation of Lions Gate's exclusive rights as set forth below.

<p align="center"><b>&lt;limetorrents.com&gt;, &lt;limetorrents.net&gt;, &lt;limetorrents.cc&gt;,<br>&lt;torrentdownload.biz&gt;</b></p>

20     19.   Lions Gate is informed and believes and on that basis alleges that
21 defendant Muhammad Javed Ashraf and one or more of the other defendants operate
22 websites at the domain names <limetorrents.com>, <limetorrents.net>,
23 <limetorrents.cc> and <torrentdownload.biz> (collectively the "Ashraf Sites").
24 Lions Gate is informed and believes and on that basis alleges that the operator(s) of
25 the Ashraf Sites have unlawfully disseminated the Stolen Film using the
26 "BitTorrent" protocol, which is a type of peer-to-peer filesharing protocol.
27 Specifically, these sites host small files called "torrent" files. Each torrent file
28 contains an instruction set including a unique "hash value" that allows the end user's

client program to locate and connect to a group of other users (called a "swarm") who are all simultaneously sharing copies of the Stolen Film with one another. By downloading one of these "torrent" files associated with the Stolen Film from one of the Ashraf Sites, users join a "swarm" where they download parts of the Stolen Film from many different users and also upload to other users parts of the Stolen Film they have already received, until eventually they have reproduced the entire Stolen Film on their own hard drives and in most cases have also uploaded all or a substantial part of the Stolen Film to others.

20. Lions Gate first became aware that copies of the Stolen Film were being disseminated through <limetorrents.com> on or about July 25, 2014 and subsequently discovered that the Ashraf Sites are under common ownership and control and have all been used to disseminate the Stolen Film. Lions Gate sent multiple demand letters to the operator(s) of the Ashraf Sites demanding that they immediately cease their infringement but received no response, and the infringement did not stop.

<center><billionuploads.com></center>

21. Lions Gate is informed and believes and on that basis alleges that defendant Amiel Elbar and one or more of the other defendants operate a website at the domain name <billionuploads.com>. Lions Gate is informed and believes and on that basis alleges that the operator(s) of <billionuploads.com> have unlawfully disseminated the Stolen Film by hosting copies of the Stolen Film in one or more directories where users could download copies of the Stolen Film directly to their computers.

22. Lions Gate first became aware that copies of the Stolen Film were being disseminated through <billionuploads.com> on or about July 25, 2014. Lions Gate sent multiple demand letters to the operator(s) of the site demanding that immediately cease their infringement but received no response, and the infringement did not stop.

<hulkfile.eu>, <filestorm.to>

23. Lions Gate is informed and believes that defendant Ahmed Saleh and one or more of the other defendants operate websites at the domain names <hulkfile.eu> and <filestorm.to> (collectively the "Saleh Sites"). Lions Gate is informed and believes and on that basis alleges that the operator(s) of the Saleh Sites have unlawfully disseminated the Stolen Film by hosting copies of the Stolen Film in one or more directories where users could download copies of the Stolen Film directly to their computers.

24. Lions Gate first became aware that copies of the Stolen Film were being disseminated through <hulkfile.eu> on or about July 25, 2014. Lions Gate sent multiple demand letters to the operator(s) of the site demanding that they immediately cease their infringement but received no response and the infringement did not cease.

25. Following entry of the Court's preliminary injunction and temporary restraining order in this case Lions Gate is informed and believes that the operator(s) of <hulkfile.eu> established the website <filestorm.to> where they continued to infringe Lions Gate's rights in the Stolen Film despite written demands from Lions Gate that they cease their infringement.

<played.to>

26. Lions Gate is informed and believes that defendant Jerome Gillan operates a website at the domain name <played.to>. Lions Gate is informed and believes and on that basis alleges that defendant Gillan has unlawfully disseminated the Stolen Film by hosting copies of the Stolen Film in one or more directories and by displaying an embedded viewing window in which users could stream copies of the Stolen Film directly to their screens.

27. Lions Gate first became aware that copies of the Stolen Film were being disseminated through <played.to> on or about July 25, 2014. Lions Gate sent multiple demand letters to Mr. Gillan demanding that he immediately cease his

1 infringement but received no response and the infringement did not stop.

<swankshare.com>

28. Lions Gate is informed and believes that defendant Lucas Lim and one or more of the other defendant(s) operate a website at the domain name <swankshare.com>. Lions Gate is informed and believes and on that basis alleges that the operator(s) of <swankshare.com> have unlawfully disseminated the Stolen Film by hosting copies of the Stolen Film in one or more directories where users could download copies of the Stolen Film directly to their computers.

29. Lions Gate is informed and believes that copies of the Stolen Film were being disseminated through <swankshare.com> as early as July 25, 2014. Lions Gate sent multiple demand letters to the operator(s) of the site demanding that they immediately cease their infringement but received no response and the infringement did not stop.

<dotsemper.com>

30. Lions Gate is informed and believes and on that basis alleges that defendant Tom Messchendorp and one or more of the other defendants operate a website at the domain name <dotsemper.com>. Lions Gate is informed and believes and on that basis alleges that the operator(s) of <dotsemper.com> have unlawfully disseminated the Stolen Film in multiple ways.

31. First, <dotsemper.com> has hosted copies of the Stolen Film in one or more directories where users could download copies of the Stolen Film directly to their computers.

32. Second, <dotsemper.com> has also displayed an embedded viewing window in which users could stream copies of the Stolen Film directly to their screens.

33. Lions Gate first became aware that copies of the Stolen Film were being disseminated through <dotsemper.com> on or about July 25, 2014. Lions Gate sent multiple demand letters to the operator(s) of the site demanding that they

immediately cease their infringement but received no response and the infringement did not stop.

34. Lions Gate is informed and believes and on that basis alleges that Defendants and each of them are either continuing to unlawfully distribute, reproduce, perform and otherwise exploit copies of the Stolen Film to users in the United States (and elsewhere) or would be continuing such unlawful conduct but for the preliminary injunction entered by the Court in this matter.

35. Lions Gate is informed and believes that Defendants and each of them have used Internet Service Providers located in California and/or elsewhere in the United States to carry out their unlawful activities alleged herein.

36. Lions Gate has not authorized Defendants to distribute, reproduce, perform or otherwise exploit the Film within the United States or North America.

37. Lions Gate is informed and believes and on that basis alleges that Defendants and each of them have actual and constructive knowledge of Lions Gate's exclusive rights in the Film, and have distributed, reproduced, performed and otherwise exploited the Stolen Film willfully, maliciously and with wanton disregard of Lions Gate's exclusive rights.

## FIRST CAUSE OF ACTION

**(Direct Federal Copyright Infringement – Against All Defendants)**

**[17 U.S.C. §§ 501, *et seq.*]**

38. Lions Gate refers to, repeats and realleges all allegations contained in Paragraphs 1 through 37 of this First Amended Complaint and incorporates them by reference as though set forth in full.

39. At all relevant times, Lions Gate has been the exclusive licensee with the sole and exclusive right to distribute, reproduce, perform and otherwise exploit the Film in the United States and throughout North America.

40. Defendants have willfully, intentionally and maliciously distributed, reproduced, performed and otherwise exploited the Film without Lions Gate's

authorization, consent or approval and in violation of Lions Gate's exclusive rights under the Copyright Act.

41. Lions Gate is informed and believes and on that basis alleges that Defendants, and each of them, are fully aware of Lions Gate's exclusive rights, and have infringed Lions Gate's rights willfully, maliciously and with wanton disregard.

42. Defendants' conduct as alleged herein has caused and in the absence of permanent injunctive relief will continue to cause Lions Gate irreparable harm for which there is no adequate remedy at law, and has also caused damage to Lions Gate in an amount which cannot be accurately computed at this time but will be proven at trial.

## SECOND CAUSE OF ACTION

**(Contributory Federal Copyright Infringement – Against All Defendants)**

**[17 U.S.C. §§ 501, *et seq.*]**

43. Lions Gate refers to, repeats and realleges all allegations contained in Paragraphs 1 through 42 of this First Amended Complaint and incorporates them by reference as though set forth in full.

44. At all relevant times, Lions Gate has been the exclusive licensee with the sole and exclusive right to distribute, reproduce, perform and otherwise exploit the Film in the United States and throughout North America.

45. Lions Gate is informed and believes and on that basis alleges that individuals in the United States and elsewhere have used Defendants' websites to directly infringe Lions Gate's exclusive rights under the Copyright Act on a daily basis by, for example, creating and distributing unauthorized reproductions of the Stolen Film in violation of Lions Gate's exclusive rights. Each such violation of Lions Gate's exclusive rights constitutes a separate and distinct act of copyright infringement.

46. Defendants are liable as contributory infringers for the copyright infringement committed via their websites. Defendants have knowledge of this

infringement, including without limitation because Lions Gate notified them of the infringement, but Defendants continued to cause, enable, induce, facilitate and materially contribute to the infringement by continuing to provide their users with the means to unlawfully distribute, reproduce and otherwise exploit the Stolen Film in the manner described above.

47. Through the conduct described above, Defendants are contributorily liable for the infringement described herein.

48. Lions Gate is informed and believes and on that basis alleges that Defendants, and each of them, are fully aware of Lions Gate's exclusive rights, and have contributorily infringed Lions Gate's rights willfully, maliciously and with wanton disregard.

49. Defendants' conduct as alleged herein has caused and in the absence of permanent injunctive relief will continue to cause Lions Gate irreparable harm for which there is no adequate remedy at law, and has also caused damage to Lions Gate in an amount which cannot be accurately computed at this time but will be proven at trial.

### THIRD CAUSE OF ACTION

### (Vicarious Federal Copyright Infringement – Against All Defendants)

### [17 U.S.C. §§ 501, *et seq.*]

50. Lions Gate refers to, repeats and realleges all allegations contained in Paragraphs 1 through 49 of this First Amended Complaint and incorporates them by reference as though set forth in full.

51. At all relevant times, Lions Gate has been the exclusive licensee with the sole and exclusive right to distribute, reproduce, perform and otherwise exploit the Film in the United States and throughout North America.

52. Lions Gate is informed and believes and on that basis alleges that individuals in the United States and elsewhere have used Defendants' websites to directly infringe Lions Gate's exclusive rights under the Copyright Act on a daily

basis by, for example, creating and distributing unauthorized reproductions of the Stolen Film in violation of Lions Gate's exclusive rights. Each such violation of Lions Gate's exclusive rights constitutes a separate and distinct act of copyright infringement.

53. Defendants are liable as vicarious infringers for the copyright infringement committed via their websites. At all relevant times, Defendants (i) have had the right and ability to control and/or supervise the infringing conduct of their users, and (ii) have had a direct financial interest in, and derived financial benefit from, such infringing conduct.

54. By way of example and without limitation, Lions Gate is informed and believes and on that basis alleges that Defendants have derived a financial benefit from the infringing conduct by generating revenue from paid advertisements and/or solicitations of donations that are or were displayed on Defendants' websites alongside or in close proximity to the links that have provided Defendants' users with the means to unlawfully distribute, reproduce and otherwise exploit the Stolen Film.

55. Lions Gate is informed and believes and on that basis alleges that Defendants and each of them have the right and ability to supervise this infringing conduct because, among other things, Defendants operate the websites and exercise direct control over the content that users can access through their websites and the conditions under which users can access such content.

56. Through the conduct described above, Defendants are vicariously liable for the infringement described herein.

57. Lions Gate is informed and believes and on that basis alleges that Defendants, and each of them, are fully aware of Lions Gate's exclusive rights, and have vicariously infringed Lions Gate's rights willfully, maliciously and with wanton disregard.

58. Defendants' conduct as alleged herein has caused and in the absence of

permanent injunctive relief will continue to cause Lions Gate irreparable harm for which there is no adequate remedy at law, and has also caused damage to Lions Gate in an amount which cannot be accurately computed at this time but will be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Lions Gate demands judgment against the Defendants jointly and severally, and demands that the Court grant Lions Gate relief against the Defendants jointly and severally as set forth below.

1. That the Court enter a permanent injunction:
   a. Prohibiting Defendants and each of them, including without limitation their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns and all those acting in active concert or participation with any of them, as well as any person in possession of the Stolen Film or any portion thereof, from:
      i. hosting, linking to, distributing, reproducing, performing, selling, offering for sale, making available for download, streaming or making any other use of any copy or copies of the Stolen Film or any portion thereof in any form;
      ii. taking any action that induces, causes or materially contributes to the direct infringement of Lions Gate's rights in the Film by any third party, including without limitation hosting, linking to or otherwise providing access to any torrent files, trackers, links (including without limitation magnet links), hash values or other instruction sets of any kind that enable users to locate or access any "swarm" or other location where any copy or copies of the Stolen Film or any portion thereof are being distributed, reproduced, performed or otherwise exploited in any form; and

       iii. otherwise infringing Lions Gate's rights in any manner, whether directly, contributorily, vicariously or in any other way;

b. Prohibiting Defendants and each of them, including without limitation their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns and all those acting in active concert or participation with any of them, from operating any of the websites identified in this Complaint and such further and additional websites that may be discovered and submitted to the Court to be added to the injunction as the Court finds equitable and appropriate;

c. Requiring Defendants and each of them, including without limitation their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns and all those acting in active concert or participation with any of them, to take all steps necessary to recall and recover all copies of the Stolen Film or any portion thereof that they have distributed, reproduced or otherwise made available to any other person at any time and to turn over such recalled and recovered copies to Lions Gate;

d. Requiring Defendants and each of them, including without limitation their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns and all those acting in active concert or participation with any of them, to deliver to Lions Gate, at Defendants' cost:

       i. All hard copy and electronic copies of the Stolen Film and any images from or other portions of the Stolen Film, as well as any other images or films owned by Lions Gate, or any portions or modifications thereof, within the possession, custody or control of Defendants and any of them, pursuant to an appropriate protocol for identifying and retrieving all infringing electronically stored

information within the possession, custody or control of Defendants and each of them;

   ii. Verifications executed under penalty of perjury confirming that Defendants and each of them have complied with the requirements of subparagraphs 1(a) through 1(d)(i) above and that no copies of the Stolen Film or any portions thereof remain within their possession, custody or control; and

   iii. All servers, hard drives, flash drives, solid state drives, optical discs, mobile devices, personal computers and any other medium within their possession, custody or control on which any copy or copies of the Stolen Film or any images from or other portions of the Stolen Film, or any other images or films owned by Lions Gate, or any portions or modifications thereof presently reside, or which have been used to disseminate any portion of the Stolen Film or any other portion thereof or any other images or films owned by Lions Gate, including all passwords, encryption keys and other credentials, data or other information that Lions Gate may require in order to conduct an independent forensic investigation to confirm that Defendants and each of them have complied with the requirements of Paragraphs 1(a) through 1(d)(i) above and that the verifications delivered pursuant to Paragraph 1(d)(ii) above are truthful; and

   e. Prohibiting Defendants and each of them, including without limitation their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns and all those acting in active concert or participation with any of them, from effecting assignments or transfers, forming new entities or associations or utilizing any other device for the

FIRST AMENDED COMPLAINT
CASE. NO. 2:14-CV-06033-MMM-AGRX

- 14 -

purpose of circumventing or otherwise avoiding the prohibitions set forth herein;

f. Ordering that all third parties, including without limitation all Internet Service Providers ("ISP"), hosts, domain name server operators, cloud storage providers and advertising service providers, who are currently providing services used in connection with the websites identified in this Complaint or such further and additional websites that may be discovered and submitted to the Court, be added to the injunction as the Court finds equitable and appropriate;

g. Requiring all network information centers, registry operators and/or domain name registrars currently providing services in connection with the domain names identified in this First Amended Complaint or such further and additional domain names that may be discovered and submitted to the Court to be added to the injunction as the Court finds equitable and appropriate to disable service to such domain names, to place such domain names on "locked" status and to take all steps necessary to cancel the registrations of such domain names or effect the transfer of the registrations of such domain names to Lions Gate, at Lions Gate's option;

h. Requiring any banks, savings and loan associations, payment processors or other financial institutions, payment providers, third party processors and advertising service providers of Defendants or any of them, to immediately locate all accounts connected to Defendants or Defendants' infringing activities and to immediately cease transferring or disposing of any money or other of Defendants' assets, cease allowing such funds to be transferred or withdrawn, and cease allowing any diminutions to be made by Defendants from such accounts pending further order of the Court.

2. That the Court award Lions Gate actual damages and profits or statutory damages pursuant to 17 U.S.C. § 504, at the election of Lions Gate.

3. That the Court award Lions Gate its costs of suit incurred herein, including its attorneys' fees and investigators' fees incurred by Lions Gate in investigating Defendants' unlawful conduct, as provided by applicable law.

4. That the Court retain jurisdiction of this action for the purpose of enabling Lions Gate to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

5. That the Court grant Lions Gate such other and further relief as it deems just and equitable to make Lions Gate whole for the damage caused by Defendants.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED: December 9, 2014   Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: /s/ Dennis L. Wilson
DENNIS L. WILSON

Attorneys for Plaintiff
Lions Gate Films Inc.

PROOF OF SERVICE

I, the undersigned say, I am and was at all times herein mentioned a resident of the County of Los Angeles, over the age of eighteen (18) years and not a party to the within action or proceeding. My business address is 9720 Wilshire Boulevard, Penthouse Suite, Beverly Hills, California 90212 and I am employed in the offices of Kilpatrick Townsend & Stockton LLP by a member of the Bar of this Court at whose direction the service mentioned herein below was made.

On **December 9, 2014**, I served the following document(s):

**FIRST AMENDED COMPLAINT FOR: (1) DIRECT FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 501, *ET SEQ.*); (2) CONTRIBUTORY FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 501, *ET SEQ.*); (3) VICARIOUS FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 501, *ET SEQ.*); AND JURY TRIAL DEMANDED**

upon *defendants* in this action by means of electronic delivery to the following email addresses:

kof_javed@hotmail.com;
dmca@billionuploads.com;
admin@billionuploads.com;
John.arsenault@frontrangelegalservices.com
swankshare@gmail.com;
DOTSEMPER.COM@domainsbyproxy.com
freshwap@hotmail.com
quasi-mundo@hotmail.com
abuse@hulkfile.com

Upon the <hulkfile.eu> defendants in this action by means of electronic delivery to the following email addresses:

alexpepena@gmail.com; webmaster@nilehoster.com; yokota@nwstat.us; billing@nilehoster.com; nilehosterpay2@yahoo.com; mynewppacct@yahoo.com; nilehosterpay@yahoo.com; hulkfile@gmail.com; thisismeahmedgamal@gmail.com; ahmed.saleh@msn.com; pay4voka@gmail.com

As of the filing I have received notice that delivery failed to the following addresses: abuse@hulkfile.com, alexpepena@gmail.com, thisismeahmedgamal@gmail.com, ahmed.saleh@msn.com and yokota@nwstat.us, except for those addresse, I have not received any electronic message or other indication that the transmissions were unsuccessful.

PROOF OF SERVICE - 1 -

Also on **December 9, 2014**, I caused an envelope containing a true copy of the above documents, with postage thereon fully prepaid, to be placed in the United States mail at Beverly Hills, California, for international service upon the below-referenced defendants with addresses as follows:

Lucas Lim d/b/a <swankshare.com>
Blk 812 Tampines Ave. 4
#06-219
Singapore 520812
Singapore

Muhammad Javed Ashraf d/b/a <limetorrents.com>
Iwebspro
428-N, Samanabad
Lahore
Punjab 54700
Pakistan

| | |
|---|---|
| John Arsenault<br>Wessels & Arsenault LLC<br>1333 West 120th Avenue Suite 219<br>Westminster, CO 80234-2713 | Counsel for dmca@played.to |

I am readily familiar with the practice of Kilpatrick Townsend & Stockton LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after deposit for mailing in affidavit.

I declare under penalty of perjury that the foregoing is true and correct. Executed on **December 9, 2014** at Beverly Hills, California.

_____
Patricia Cloutier