## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 14-06033 MMM (AGRx) | Date | May 22, 2015 |

Title  *Lions Gate Films, Inc. v. Ahmed Saleh, et al.*

Present: The Honorable   MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   **Order Granting Plaintiff's *Ex Parte* Application [Docket No. 48]**

### I. BACKGROUND

On July 31, 2014, Lions Gate Films, Inc. filed this copyright infringement action against various fictitious defendants, alleging that they had purportedly infringed its copyright in a motion picture titled "The Expendables 3" (the "Film").[1] The next day, Lions Gate filed an application for a temporary restraining order restraining defendants, who operate six websites – <limetorrents.com>, <billionuploads.com>, <hulkfile.eu>, <played.to>, and <dotsemper.com> – from further infringing its copyright by hosting stolen copies of the Film on their websites.[2] On August 4, 2014, the court granted Lions Gate's application and issued a temporary restraining order and order to show cause why a preliminary injunction should not issue.[3]

Defendants did not respond to the court's order to show cause or otherwise appear; the court therefore entered findings of fact and conclusions of law and a preliminary injunction on August 8, 2014. The injunction restrained further infringement by <limetorrents.com>, <billionuploads.com>,

---

[1]Complaint, Docket No. 1 (July 31, 2014).

[2]Application for Temporary Restraining Order as to Infringement of Copyright Application, Docket No. 10 (Aug. 1, 2014).

[3]Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, Docket No. 17 (Aug. 4, 2014).

<hulkfile.eu>, <played.to>, and <dotsemper.com>.[4] On September 23, 2014, after Lions Gate proffered evidence that its investigation had discovered that stolen copies of the Film were being hosted on the websites <limetorrents.net> and <torrentdownload.biz>, the court issued an order extending the preliminary injunction entered on August 8, 2014 to defendants operating <limetorrents.net> and <torrentdownload.biz>.[5]

On December 9, 2014, Lions Gate filed a first amended complaint against individual defendants Ahmed Saleh, Amiel Elbar, Muhammad Javed Ashraf, Tom Messchendorp, Jerome Gillan, Lucas Lim, and various fictitious defendants.[6] The complaint alleges that Ashraf is a Pakistani citizen who operates the following websites that allegedly hosted copies of the stolen Film: <limetorrents.com>, <limetorrents.net>, <limetorrents.cc>, and <torrentdownload.biz>.[7] The amended complaint alleges that Elbar is an Israeli citizen who purportedly operates <billionuploads.com>.[8] Saleh is purportedly an Egyptian citizen who operated <hulkfile.eu> and <filestorm.to>, both of which allegedly hosted copies of the Film.[9] Gillan is purportedly an Ohio citizen who operated <played.to>.[10] Lions Gate asserts that Lim, a Singapore citizen, hosted stolen copies of the Film on <swankshare.com>.[11] Finally, it asserts that Messchendorp is a Spanish citizen who operated the website <dotsemper.com>, which also allegedly hosted unauthorized copies of the Film.[12] Lions Gate pleads three causes of action against each of the individual defendants: (1) direct federal copyright infringement in violation of 17 U.S.C. § 501 *et seq.*;[13] (2) contributory copyright infringement in violation of 17 U.S.C. § 501 *et seq.*;[14] and (3)

---

[4]See Findings of Fact and Conclusions of Law, Docket No. 27 (Aug. 8, 2014); Preliminary Injunction, Docket No. 28 (Aug. 8, 2014).

[5]Minutes (In Chambers): Order Granting Lions Gate's Application and Ordering that the Preliminary Injunction Apply to the Websites <limetorrents.net> and <torrentdownload.biz>, Docket No. 39 (Sept. 23, 2014); see also *Ex Parte* Application for Order Explicitly Confirming that the Court's Preliminary Injunction Applies to Additional Infringing Websites, Docket No. 36 (Sept. 16, 2014).

[6]First Amended Complaint ("FAC"), Docket No. 45 (Dec. 9, 2014).

[7]See FAC, ¶¶ 8, 19.

[8]*Id.*, ¶¶ 7, 21.

[9]*Id.*, ¶¶ 6, 23.

[10]*Id.*, ¶¶ 10, 26.

[11]*Id.*, ¶¶ 11, 28.

[12]*Id.*, ¶¶ 9, 30.

[13]*Id.*, ¶¶ 38-42.

[14]*Id.*, ¶¶ 43-49.

vicarious federal copyright infringement in violation of 17 U.S.C. § 501 *et seq.*[15]

On December 10, 2014, Lions Gate requested that the clerk issue a summons on the first amended complaint.[16] The clerk issued a twenty-one day summons two days later.[17] On January 21, 2015, Lions Gate filed an *ex parte* application seeking leave to serve Ashraf, Elbar, Messchendorp, and Lim by electronic mail ("email") under Rule 4(f)(3) of the Federal Rules of Civil Procedure.[18]

## II. DISCUSSION

### A. Legal Standard Governing Alternative Service on a Foreign Individual Under Rule 4(f)(3)

Rule 4(f) of the Federal Rules of Civil Procedure identifies the methods a plaintiff can use to serve an individual located outside the United States. See FED.R.CIV.PROC. 4(f). Under Rule 4(f)(3), the court can authorize service on a foreign individual "by other means not prohibited by international agreement." FED.R.CIV.PROC. 4(f)(3). Other than the requirement that the method of service not be proscribed by international agreement, the rule imposes no limitation on the court's authority to authorize alternative means of service. See *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text. In fact, as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country").

A plaintiff need not pursue other methods of service before requesting that the court authorize an alternative method under Rule 4(f)(3). See *id.* at 1015 ("Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant"); see also *id.* at 1016 ("[W]e disapprove of the statements in *Graval* [*v. P.T. Bakrie & Bros.*, 986 F.Supp. 1326 (C.D. Cal. 1996),] which would require attempted service by all feasible alternatives before service under Rule 4(f)(3) is allowed. Instead, we hold that Rule 4(f)(3) is an equal means of effecting service of process under the Federal Rules of Civil Procedure").

"Even if facially permitted by Rule 4(f)(3)," however, "a method of service of process must also comport with constitutional notions of due process." *Id.* at 1016. To meet this requirement, service

---

[15]*Id.*, ¶¶ 50-58.

[16]Request for Clerk to Issue Summons on Amended Complaint, Docket No. 46 (Dec. 10, 2014).

[17]21 Day Summons Issued Re: First Amended Complaint, Docket No. 47 (Dec. 12, 2014).

[18]*Ex Parte* Application for Leave to Service Defendants Muhammad Javed Ashraf, Amiel Elbar, Tom Messchendorp, and Lucas Lim with Process by Electronic Mail ("Application"), Docket No. 48 (Jan. 21, 2015).

must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." See *Brockmeyer v. May*, 383 F.3d 798, 805 (9th Cir. 2004).

### B. Whether Service of Process by Email is Prohibited by International Agreement

#### 1. Service of Process on Ashraf, Elbar, and Messchendorp

Ashraf, Elbar, and Messchendorp are citizens of Pakistan, Israel, and Spain, respectively.[19] Like the United States, Pakistan, Israel, and Spain are signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.[20] Compliance with the Hague Convention is mandatory in all cases in which it applies. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). Under the Hague Convention, service of process between signatory countries must normally be effected under Article 5, i.e., through the signatory state's Central Authority. See Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, 20 U.S.T. 361, T.I.A.S. No. 6638 ("Hague Convention").[21]

Under Article 10, however, the Hague Convention does not prohibit service of process by other means apart from the Central Authority. Article 10 states:

"Provided the State of destination does not object, the present Convention shall not interfere with –
(a)    the freedom to send judicial documents, by postal channels, directly to persons abroad;
(b)    the freedom of judicial officers, officials, or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials, or other competent persons of the State of destination; and
(c)    the freedom of any person interested in a judicial proceeding to effect service of

---

[19] See FAC, ¶¶ 7-9.

[20] See STATUS TABLE, HAGUE CONVENTION ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN CIVIL OR COMMERCIAL MATTERS, available at http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited May 22, 2015) (indicating that Pakistan, Israel, Spain, and the United States of America are signatories to the Hague Convention).

[21] Article 5 provides: "The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either – (a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or (b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed." Hague Convention, art. 5.

judicial documents directly through the judicial officers, officials, or other competent persons of the State of destination."

Courts in this circuit have concluded that service of process by email is not expressly prohibited by the Hague Convention and thus may be ordered under Rule 4(f)(3). See *Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 WL 1038752, *2 (N.D. Cal. Mar. 27, 2012) ("Facebook also has demonstrated that service via email is not prohibited by an international agreement. The Foreign Defendants registered domain names to physical addresses in Anguilla (Intercontinental Domain, Inc.), Antigua (Pioneer Enterprises, Ltd.), Canada (Karrie–Lee Karreman, PPX.com, and Elise Petri), Hong Kong (YourTick), Panama (Cleanser Products, Mackrooner Ltd. Inc., and Newgate Services/SMTM Enterprises Ltd.), and Thailand (Counter Balance Enterprises Ltd.). Anguilla, Antigua, Hong Kong, and Canada are signatories to or bound by the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents. 20 U.S.T. 361, T.I.A.S. No. 6638 (1969) ("Hague Service Convention"). . . . . Facebook cites cases from this District finding that the Hague Service Convention does not expressly prohibit email service. . . . Therefore, [the] Court GRANTS Facebook's Motion to serve the Foreign Defendants via email," citing *Gucci America, Inc. et al v. Huoqing*, Case No. 09–05969 JCS, Dkt. No. 17 (N.D. Cal. Mar. 11, 2010) (China); *craigslist, Inc. v. Eddie Temple et al.*, Case No. 09–04738 JW, Dkt. No. 21 (N.D. Cal. May 20, 2010) (Canada); *Williams–Sonoma Inc. v. Friendfinder Inc.*, Case No. 06–06572 JSW, 2007 WL 1140639 (N.D. Cal. Apr.17, 2007) (Canada)); *Williams-Sonoma, Inc.*, 2007 WL 1140639 at *2-3 ("According to the information WSI has gathered, the named defendants are located in the Ukraine, the Czech Republic, Israel, Switzerland, the Philippines, Norway, Canada, India and England. With the exception of India and the Philippines, these countries are signatories to the Hague Convention. The Court concludes that WSI has demonstrated that service via email is not prohibited by an international agreement. In *Rio Properties*, the Ninth Circuit stated that 'as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country.' . . . Plaintiff's supplemental briefing did not uncover any express prohibitions against email service [under the Hague Convention]. Accordingly, WSI's motion is GRANTED to the extent it seeks to effectuate service via email," quoting *Rio Properties*, 284 F.3d at 1014).

Because service of process by email is not explicitly prohibited by the Hague Convention, there is no bar to authorizing alternative service of process on Ashraf, Elbar, and Messchendorp.[22]

---

[22]In *Agha v. Jacobs*, the court observed that email and facsimile were indistinguishable from "postal channels" for purposes of Article 10 of the Hague Convention. No. C 07-1800 RS, 2008 WL 2051061, *2 (N.D. Cal. May 13, 2008) ("Agha's attempt to distinguish email and facsimile from the 'postal channels' referred to in the text of Article 10 is unavailing. There might be some circumstances under which such a distinction could be drawn, but there is no policy or other basis for doing so on the facts here. Accordingly, Agha has failed to meet his burden of showing that the 'other means' of service he proposes to utilize are permissible under an applicable 'international agreement' – the Hague Convention"). Noting that Germany, the country where plaintiff sought to serve a defendant by email and facsimile, had objected to service through "postal channels" under Article 10(a) of the Hague Convention, the court denied plaintiff's request for alternative service under Rule 4(f)(3). *Id.* at *2.

---

Many district courts addressing the same issue have reached a contrary conclusion and concluded that alternative service of process can be ordered under Rule 4(f)(3) even where the Hague Convention applies and a country has objected to the alternative forms of service permitted by Article 10. See *Richmond Technologies, Inc. v. Aumtech Business Solutions*, No. 11-CV-02460-LHK, 2011 WL 2607158, *12 (N.D. Cal. July 1, 2011) ("[N]umerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies. This is true even in cases involving countries that, like India, *have objected to the alternative forms of service permitted under Article 10 of the Hague Convention*," citing *In re LDK Solar Securities Litigation*, No. C 07–05182 WHA, 2008 WL 2415186, *3 (N.D. Cal. June 12, 2008) (permitting service of Chinese defendants under Rule 4(f)(3), despite China's objections to Article 10, because the service requested did not involve service by "postal channels"); *Williams–Sonoma Inc.*, 2007 WL 1140639 at *2 (permitting service by email, but not by international mail, for defendants in countries that had objected to Article 10 of the Hague Convention)); see also *F.T.C. v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, *4 (S.D.N.Y. Mar. 7, 2013) ("Service by email and Facebook are not among the means listed in Article 10, and India has not specifically objected to them. Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10. Service by Facebook is clearly outside the scope of Article 10. India has not objected to service by Facebook, and the Court knows of no international treaty prohibiting such means. Therefore, service by means of email and Facebook is not prohibited by international agreement. The Court, in its discretion, is therefore at liberty to authorize service by such means, provided that due process is also satisfied"); *Gurung v. Malhotra*, 279 F.R.D. 215, 219-20 (S.D.N.Y. 2011) ("Where a signatory nation has objected to only those means of service listed in Article X, a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article X").

More fundamentally, even if the court were to apply *Agha*, it would not alter its conclusion that there is no bar to email service in this case. The *Agha* court found that email was prohibited by the Hague Convention because Germany had objected to service by "postal channels" under Article 10(a). See *Agha*, 2008 WL 2051061 at *2. The countries in which the individual defendants in this case reside – Pakistan, Israel, and Spain – have stated no objection to service by "postal channels" or any other means under Article 10(a). (See Declarations of Pakistan, HAGUE CONVENTION ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN CIVIL OR COMMERCIAL MATTERS, available at http://www.hcch.net/index_en.php?act=status.comment&csid=436&disp=resdn (last visited Jan. 27, 2015) (stating that Pakistan "has no objection to such service by postal channels directly to the persons concerned (Article 10(a))"); Declarations and Reservations of Israel, HAGUE CONVENTION ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN CIVIL OR COMMERCIAL MATTERS, available at http://www.hcch.net/index_en. php?act=status.comment&csid =405&disp=resdn (last visited May 22, 2015) (indicating that Israel has not objected to service pursuant to Article 10(a)); Declarations of Spain, HAGUE CONVENTION ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN CIVIL OR COMMERCIAL MATTERS, available at

### 2. Service of Process on Lim

Lim is a citizen of Singapore, which is not a signatory to the Hague Convention. See *Playboy Enterprises International, Inc. v. Smartitan (Singapore) PTE Ltd.*, 804 F.Supp.2d 730, 738 n. 3 (N.D. Ill. 2011) ("Singapore is not a member of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, and thus Rule 4(f)(1) is not applicable here"). Lions Gate reports that its investigation has revealed there is no international agreement governing service of process between the United States and Singapore.[23] The court agrees, based on its own research, that no such international agreement exists. Because there is no international agreement, service of process by email on Lim cannot be "prohibited by international agreement." FED.R.CIV.PROC. 4(f)(3).

### C. Whether Service of Process by Email Comports with Due Process

Having concluded that alternative service of process by email under Rule 4(f)(3) on Ashraf, Elbar, Messchendorp, and Lam is not prohibited by any international agreement, the court must next consider whether such service would comport with due process. As noted, in making this inquiry, the court considers whether the service is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Rio Properties*, 284 F.3d at 1016 (quoting *Mullane*, 339 U.S. at 314).

Lions Gate states that it wishes to serve the defendants by email at the following addresses:[24]

| | | |
|---|---|---|
| **Ashraf**: | (1) | <kof_javed@hotmail.com> |
| | (2) | <freshwap@hotmail.com> |
| **Elbar**: | (1) | <dmca@billionuploads.com> |
| | (2) | <admin@billionuploads.com> |
| **Messchendorp:** | (1) | <quasi-mundo@hotmail.com> |
| **Lim**: | (1) | <swankshare@gmail.com> |

Lions Gate asserts it has confirmed that Ashraf owns each of the email addresses it has identified

---

http://www.hcch.net/index_en.php?act=status.comment&csid=421&disp=resdn (last visited May 22, 2015) (indicating that Spain has not objected to service pursuant to Article 10(a)).) Therefore, even if the court were to deem service by email equivalent to service through "postal channels," it would not be prohibited where, as here, the defendants' domiciliary countries have not objected to service under Article 10(a) of the Hague Convention.

[23]Declaration of Christopher Varas in Support of *Ex Parte* Application for Leave to Serve Defendants Muhammad Javed Ashraf, Amiel Elbar, Tom Messchendorp, and Lucas Lim with Process by Electronic Mail ("Varas Decl."), Docket No. 48-2 (Jan. 21, 2015), ¶ 14, Exh. J.

[24]See Application at 2-3.

for him because he used the addresses to register his domain names.[25] It asserts that Elbar uses <dmca@billionuploads.com> because Elbar's website states that it is the address that should be used submit DMCA notices to him.[26] Lions Gate identified <admin@billionuploads.com> as being an email address associated with Elbar because Elbar used the address to respond to a demand letter Lions Gate sent to the operator of <billionuploads.com>.[27] Finally, Lions Gate states that it has confirmed that Lim's email address is <swankshare@gmail.com> because he used that address to register his domain name, as well as to correspond with Lions Gate during this litigation.[28] Lions Gate reports that, to the best of its knowledge, the email addresses are operational and that no prior emails sent to the addresses have been returned as undeliverable.[29]

Given this information, the court is satisfied that alternative service of process by email on Ashraf, Elbar, Messchendorp, and Lim is reasonable calculated to give them notice of the litigation and afford them an opportunity to respond to the first amended complaint. As the history of this litigation has indicated, the defendants are not easy to locate. Each owns a variety of websites and relies on electronic communications and data to operate those websites. It is also unclear whether defendants could be served personally at a physical address. Although Lions Gate has served the temporary restraining order and preliminary injunction on defendants at the physical address used to register the domain names, none of the defendants has appeared or responded to the order. By contrast, Lions Gate has been able to communicate with Elbar and Lim at the email addresses specified.

It is situations such as these, i.e., where an individual operates solely through a virtual presence on the internet, that courts have found service of process by email appropriate. See, e.g., *Facebook*, 2012 WL 1038752 at *2 ("Here, service by email is reasonably calculated to provide actual notice. First, the Foreign Defendants are involved in commercial internet activities. They registered internet domain names, which Facebook alleges the Defendants have used for commercial purposes. Indeed, the alleged [cyber]squatting schemes depend on these commercial internet activities. Second, the Foreign Defendants rely on electronic communications to operate their businesses and Facebook has valid email addresses for each of the Defendants. Finally, Facebook has demonstrated that it has made attempts to serve the Defendants at physical addresses that proved unsuitable for service. Based on the foregoing, service by email appears to be not only reasonably calculated to provide actual notice to the Foreign Defendants but the method most likely to apprise the Foreign Defendants of the action"); see also *JBR, Inc. v. Cafe Don Paco, Inc.*, No. 12-CV-02377 NC, 2013 WL 1891386, *5 (N.D. Cal. May 6, 2013) ("Courts in the Northern District have authorized service via email when . . . the plaintiff has a valid email address for defendant," citing *Facebook*, 2012 WL 1038752 at *1–2; *Gucci America, Inc.*

---

[25]See *id.* at 2; see also Varas Decl., ¶¶ 3-4, Exhs. A, B.

[26]See Application at 2; see also Varas Decl., ¶¶ 5-6, Exh. C.

[27]See Application at 2; see also Varas Decl., ¶ 7.

[28]See Application at 3; see also Varas Decl., ¶¶ 8-9, Exh. D.

[29]See Application at 3.

*v. Huoqing, No.* 09–cv–05969 JCS, 2011 WL 31191, *2–3 (N.D. Cal. Jan.3, 2011) (finding email service appropriate where a Chinese defendant operated anonymously via the internet, used a false physical address, and relied solely on electronic communications to operate his business); *Bank Julius Baer & Co. Ltd v. Wikileaks*, No. 08–cv–00824 JSW, 2008 WL 413737, *2 (N.D. Cal. Feb.13, 2008) (finding email service appropriate where plaintiffs could not locate a valid physical address for defendants, and believed them to be foreign, but had email addresses for defendants); *Williams–Sonoma Inc.*, 2007 WL 1140639 at *1–2 (finding that email service was proper where physical addresses for foreign defendants could not be ascertained, but email had been an effective means of communication between the parties)); *Kohler Co. v. Domainjet, Inc.*, No. 11-CV-1767-BEN MDD, 2012 WL 716883, *2 (S.D. Cal. Mar. 5, 2012) ("The Court is satisfied that in this case, service by e-mail will be reasonably calculated to give actual notice to Defendants. Plaintiffs allege that although they have been unable to serve Defendants at any of the three physical addresses that Defendants used in registering their domain names, Plaintiffs have communicated with Defendant Jack Sun in the past using the following e-mail address: <domainjet@foxmail.com>. Plaintiffs also allege that Defendants listed this e-mail address when registering several of their domain names. Based on the foregoing, it appears Defendants regularly check the above e-mail address and should also expect to be contacted at that address. Accordingly, service at the above e-mail address will be reasonably calculated to give actual notice to Defendants"); *Balsam v. Angeles Technology Inc.*, No. C 06-04114 JF (HRL), 2007 WL 2070297, *3 (N.D. Cal. July 17, 2007) ("The goal of Fed.R.Civ.P. 4 is to provide a plaintiff with flexibility in providing notice to a defendant. California law requires that the method be 'reasonably calculated to give actual notice to the party to be served.' The Court determined in the June 6th Order that service via email can be acceptable. It now concludes that service via the email addresses "adultactioncam.com@contactprivacy.com" and "webmaster@AdultActionCam.com" is reasonably calculated to give notice of the action to Angeles, Futurecast, One World, Simmons, and Solamito. Balsam asserts in his FAC that Futurecast is the copyright holder of 'www.AdultActionCam.com,' and the website is registered to Angeles. Angeles, Futurecast and One World are alleged not to be distinct corporations. Simmons and Solamito are the corporate officers of Futurecast and Angeles. Service via an 'adultactioncam.com' email reasonably can be expected to reach all members at this group of alleged alter-egos. Defendants should also expect to be contacted at the address they provided to the domain name registrar and to the email address provided to individuals who sign up for the website's services. Accordingly, the Court concludes that Balsam may use the email addresses "adultactioncam.com@contactprivacy.com" and 'webmaster @AdultActionCam.com'").

Although "[c]ourts have not permitted service by email[ ] where 'there was no reasonable assurance that Plaintiff's email of the complaint and summons would be received at the email addresses provided by plaintiff,'" *JBR, Inc.*, 2013 WL 1891386 at *6 (citing *Liberty Media Holdings, LLC v. Sheng Gan*, No. 11-cv-02754 MSK, 2012 WL 502265, *1 (D. Colo. Feb. 14, 2012)), the court does not believe that that is the case here. As noted, Lions Gate has confirmed that each of the email addresses has either been used by defendants to communicate with it during this litigation,[30] or that it was used to register defendants' respective domain names.[31] Defendants can expect to be reached at an email

---

[30] See Varas Decl., ¶¶ 7, 9.

[31] See *id.*, ¶¶ 3-6, 8.

address they have used during the pendency of this action, just as they "should . . . expect to be contacted at the address they provided to the domain name registrar and [at] the email address provided to individuals [for submitting DMCA notices]." *Balsam*, 2007 WL 2070297 at *3. Accordingly, the court concludes that service by email at the addresses identified by Lions Gate is reasonably calculated to provide defendants with notice of the action.

Because it concludes that service of process by email comports with due process and it is not prohibited by an international agreement, the court will order service of process on Ashraf, Elbar, Messchendorp, and Lim by email.

### III.  CONCLUSION

For the reasons stated, the court grants Lions Gate's *ex parte* application and orders service on each of the named defendants by email at the following email addresses:

**Ashraf**: (1) <kof_javed@hotmail.com>
(2) <freshwap@hotmail.com>

**Elbar**: (1) <dmca@billionuploads.com>
(2) <admin@billionuploads.com>

**Messchendorp:** (1) <quasi-mundo@hotmail.com>

**Lim**: (1) <swankshare@gmail.com>.