KILPATRICK TOWNSEND & STOCKTON LLP
LARRY W. MCFARLAND (State Bar No. 129668)
LMcFarland@kilpatricktownsend.com
DENNIS L. WILSON (State Bar No. 155407)
DWilson@kilpatricktownsend.com
CHRISTOPHER T. VARAS (State Bar No. 257080)
CVaras@kilpatricktownsend.com
9720 Wilshire Blvd PH
Beverly Hills, CA  90212-2018
Telephone:  310-248-3830
Facsimile:   310-860-0363

Attorneys for Plaintiff
LIONS GATE FILMS INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| LIONS GATE FILMS INC.,<br><br>               Plaintiff,<br><br>    v.<br><br>AHMED SALEH, an individual; AMIEL ELBAR, an individual; MUHAMMAD JAVED ASHRAF, an individual; TOM MESSCHENDORP, an individual; JEROME GILLAN, an individual; LUCAS LIM, an individual; and JOHN DOES 1-4, inclusive,<br><br>               Defendants. | Case No.: 2:14-cv-06033-MMM (AGRx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF LIONS GATE FILMS INC.'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>Date:    February 22, 2016<br>Time:    10:00 a.m.<br>Place:   Hon. Margaret M. Morrow<br>           Courtroom 780<br>           Edward R. Roybal Courthouse<br>           255 East Temple Street<br>           Los Angeles, California 90012 |

# TABLE OF CONTENTS

I.    INTRODUCTION ..........................................................................................1

II.   STATEMENT OF FACTS ...........................................................................1

    A.    Procedural Background ....................................................................1

    B.    "The Expendables 3" and Lions Gate's Rights................................2

    C.    Defaulting Defendants' Willful Infringement of Lions Gate's Rights .................................................................................................3

III.  LEGAL ARGUMENT .................................................................................4

    A.    Jurisdiction .......................................................................................4

        1.    The Court Has Subject Matter Jurisdiction .....................4

        2.    Defaulting Defendants are Subject to Personal Jurisdiction ..........5

    B.    Standard for Default Judgments.......................................................7

        1.    Lions Gate Will Be Prejudiced if Default Judgment Is Not Entered ..............................................................................8

        2.    Lions Gate's Claims Are Meritorious and Its Complaint Is Sufficient .......................................................................8

            a.    Direct Copyright Infringement ............................8

            b.    Contributory Copyright Infringement...................9

            c.    Vicarious Copyright Infringement......................10

        3.    The Sum of Money at Stake is Consistent with the Allegations of Harm in Lions Gate's Complaint..........................11

        4.    There Is No Possibility of a Genuine Issue of Material Fact ........13

        5.    The Default Entered Against Defaulting Defendants did Not Result from Excusable Neglect .....................................13

        6.    The Policy Favoring Adjudication of Disputes on the Merits does Not Weigh Against Default Judgment .................14

    C.    Lions Gate is Entitled to Its Requested Relief...............................14

        1.    Lions Gate is Entitled to Injunctive Relief ...................14

        2.    Lions Gate is Entitled to Statutory Damages of $150,000 Against Each of Defaulting Defendants ........................16

        3.    Lions Gate is Entitled to Attorneys' Fees and Costs ....................16

4.      Lions Gate is Entitled to Post Judgment Interest...........................17

IV.    CONCLUSION ..................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A&M Records, Inc. v. Napster, Inc*.,
  239 F.3d 1004 (9th Cir. 2001)..................................................................8, 9, 10, 11

*Aldabe v. Aldabe*,
  616 F.2d 1089 (9th Cir. 1980)..................................................................................7

*Amini Innovation Corp. v. KTY Intern. Marketing*,
  768 F.Supp.3d 1049 (C.D. Cal. 2011).............................................................7, 8, 13

*Autodesk, Inc. v. Flores*,
  CV:10-11687, 2011 U.S. Dist. LEXIS
  11687 (N.D. Cal. January 31, 2011) ......................................................................15

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ................................................................................................6

*Craigslist, Inc. v. Naturemarket, Inc.*,
  694 F.Supp.2d 1039 (N.D. Cal. 2010) ...........................................................passim

*D.C. Comics v. Towle*,
  989 F.Supp.2d 948 (C.D. Cal. Feb. 7, 2013)...........................................................8

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ..............................................................................................15

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986)........................................................................passim

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004).................................................................................9

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517, 114 S. Ct. 1023 L. Ed. 2d. 455 (1994) ............................................17

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996)............................................................................10, 11

*Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*,
  375 F.3d 922 (9th Cir. 2004)..................................................................................14

*Herman Miller, Inc. v. Alphaville Design, Inc.*,
  CV:08-3437, 2009 U.S. Dist. LEXIS 103384 (N.D. Cal. October 22, 2009) ..........15

*Historical Research v. Cabral*,
  80 F.3d 377 (9th Cir. 1996)....................................................................................17

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ................................................................................................5

*Jackson v. Sturkie*,
  255 F.Supp.2d 1096 (N.D. Cal. 2003) ................................................. 11

*Landstar Ranger, Inc. v. Parth Enterprises, Inc.*,
  725 F.Supp.2d 916 (C.D. Cal. 2010) ....................................... 11, 13, 14

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) ..................... 9

*Microsoft Corp. v. Nop*,
  549 F.Supp.2d 1233 (E.D. Cal. 2008) ................................................. 12

*Panavision Int'l, L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) ......................................................... 5, 6

*PepsiCo v. Tiunfo-Mex, Inc.*,
  189 F.R.D. 431 (C.D. Ca. 1999) .......................................................... 7

*Pepsico, Inc. v. Cal. Sec. Cans*,
  238 F.Supp.2d 1172 (C.D. Cal. 2002) ............................................... 14

*Philip Morris U.S.A. Inc. v. Castworld Prods.*,
  219 F.R.D. 494 (C.D. Cal. 2003) .................................................. 13, 15

*Righthaven LLC v. Hoehn*,
  716 F.3d 1166 (9th Cir. 2013) ............................................................. 9

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................................... 5

*Warner Bros. Entm't v. WTV Systems, Inc.*,
  824 F.Supp.2d 1003 (C.D. Cal. 2011) ................................................. 9

*Warner Bros. Entm't. Inc. v. Paul Duhy*,
  CV:09-5798, 2009 U.S. Dist. LEXIS
  123332 (C.D. Cal. Nov. 30, 2009) ..................................................... 15

*Warner Bros. Entm't Inc. v. Caridi*,
  346 F.Supp.2d 1068 (C.D. Cal. 2004) ............................................... 11

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) ............................................................. 5

**Statutes**

15 U.S.C. § 501(b) ................................................................................. 8

17 U.S.C. § 501 .............................................................................. 4, 5, 9

17 U.S.C. § 501(b) ................................................................................. 9

17 U.S.C. § 502 ................................................................................... 15

17 U.S.C. § 504(c) .............................................................................. 16

17 U.S.C. § 504(c)(1)..............................................................................16

17 U.S.C. § 504(c)(2).........................................................................11, 16

28 U.S.C. § 1331................................................................................4, 5

28 U.S.C. § 1338(a).............................................................................4, 5

28 U.S.C. § 1961(a)..............................................................................17

**Rules and Regulations**

Fed. R. Civ. P. 55................................................................................. 1

Fed. R. Civ. P. 55(b)(2) .......................................................................7, 8

L.R. Civ. P. 55-1................................................................................. 7

L.R. Civ. P. 55-3..................................................................................17

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Lions Gate Films Inc. ("Lions Gate") hereby submits this Memorandum of Points and Authorities in support of its Motion for Entry of Default Judgment ("Motion") against Defendants Lucas Lim, Muhammad Javed Ashraf, and Tom Messchendorp (collectively "Defaulting Defendants").

## I.      INTRODUCTION

On November 30, 2015, upon the request of Lions Gate, the Clerk of the Court entered Defaulting Defendants' default in this copyright infringement action.  Lions Gate now brings this Motion against Defaulting Defendants, seeking a permanent injunction, statutory damages and attorneys' fees and costs.

Pursuant to Federal Rule of Civil Procedure 55, the allegations of the First Amended Complaint are deemed true for purposes of this Motion, and Lions Gate is entitled to the relief it seeks.  Lions Gate also relies on the Declaration of Christopher Varas, which among other things attaches the prior declarations of Edward Cho and Robert Wenokur, which were previously submitted in support of Lions Gate's motion for a temporary restraining order and are re-submitted in support of this motion for the Court's reference.

## II.     STATEMENT OF FACTS

### A.      Procedural Background

Lions Gate filed its original complaint in this matter on July 31, 2014, seeking *inter alia*, permanent injunctive relief, an accounting of Defendants' profits, damages, and reasonable costs and attorneys' fees for direct, contributory, and vicarious copyright infringement. (Dkt. No. 1 ("Complaint")).  The Court subsequently issued Orders granting Lions Gate's *ex parte* applications for, *inter alia*, a Temporary Restraining Order on August 4, 2014 (Dkt. No. 17), Expedited Third Party Discovery on August 6 and 13, 2014 (Dkt. Nos. 24, 32), and Preliminary Injunction on August 8, 2014 (Dkt No. 28 ("Preliminary Injunction")).

Lions Gate filed its First Amended Complaint on December 9, 2014, seeking the same relief as in its Complaint (Dkt. No. 45. ("First Amended Complaint" or "FAC")), and, on January 21, 2015, an *Ex Parte* Application for Leave to serve Defendants with Process by Electronic Mail (Dkt. No. 48).  On May 22, 2015, the Court issued an Order granting Lions Gate's Application. (Dkt. No. 51 (the "Email Service Order")).

Lions Gate served Defaulting Defendants with process pursuant to the Court's order, and after Defaulting Defendants failed to answer, plead or otherwise respond to the First Amended Complaint, the Clerk entered their defaults on November 30, 2015 (Dkt. No. 60.)

**B.   <u>"The Expendables 3" and Lions Gate's Rights</u>**

Lions Gate, a company with its principal place of business in Santa Monica, California, owns rights in and to the film at issue in this case, "The Expendables 3" (the "Film").  (FAC, ¶¶ 5, 16). The Film, which had its theatrical release on August 15, 2014, is the third installment in the blockbuster "The Expendables" motion picture franchise. (*Id*., ¶ 13).  The worldwide theatrical box office revenues from the first two films in the series exceeded $575 million dollars ($575,000,000).  (*Id*., ¶ 14).

The Film is the subject of United States Copyright Registration No. PAu003734299, which is valid and in full force and effect. (FAC, ¶ 15.)  The screenplay for the Film is the subject of United States Copyright Registration No. PAu003704583, which was valid and in full force and effect prior to Defaulting Defendants' unlawful conduct alleged in First Amended Complaint. (FAC, ¶ 15; Dkt. No. 1-2.)  The Film is a derivative work based on the registered screenplay.  (*Id*.)

Lions Gate has been licensed the sole and exclusive right to distribute and exploit the Film in the United States and throughout North America, including without limitation the exclusive right to exploit the Film by means of direct exhibition in theaters, by means of the Internet and in all home video media, among other rights. (*Id*., ¶ 16).

### C.    Defaulting Defendants' Willful Infringement of Lions Gate's Rights

Defaulting Defendants, without consent or permission of Lions Gate, distributed and offered to distribute the Film over the Internet. (FAC, ¶ 4.)  More specifically, on or about July 24, 2014, Lions Gate learned that a digital file containing a high quality reproduction of the Film had been stolen and uploaded to the Internet without Lions Gate's authorization or consent.  (*Id.*, ¶ 17.)  Lions Gate understands that only a single digital file containing the Film was stolen, and that every copy of the Film alleged in Lions Gate's Complaint (and every copy available anywhere on the Internet as of the date Lions Gate filed its Complaint) originated from and is a reproduction of that single original digital file (the "Stolen Film"). (*Id.*). As of the filing of Lions Gate's initial Complaint, the Stolen Film had been downloaded more than 2.1 million times worldwide, including nearly 250,000 downloads in the United States, approximately 21,000 of which were to individuals in the Los Angeles metropolitan area (Varas Decl., Ex. 1 (Declaration of Edward Cho, originally filed as Dkt. No. 13 on August 1, 2014, and re-submitted without exhibits for the Court's reference in support of this motion ("Cho Decl."), at ¶¶ 6, 7).

Given the seriousness of the threat posed by the leak of the Film, Lions Gate immediately instructed its outside vendors, including MarkMonitor, to devote substantial resources to cataloging all websites and online services offering pirated copies of the Stolen Film and to follow up with takedown requests to the operators of the websites in question.  (Varas Decl., Ex. 2 (Declaration of Robert Wenokur, originally filed as Dkt. No. 12 on August 1, 2014, and re-submitted without exhibits for the Court's reference in support of this motion, at ¶ 18.)  Among the websites identified by MarkMonitor were websites operated by Defaulting Defendants at the following domain names: (1) <limetorrents.com>, <limetorrents.net>, <limetorrents.cc> and <torrentdownload.biz>, operated by Defendant Muhammad Javed Ashraf; (2) <swankshare.com>, operated by Defendant Lucas Lim; and (3)

<dotsemper.com>, operated by Defendant Tom Messchendorp (collectively "Defaulting Defendants' Sites"). (FAC, ¶¶ 18-20, 28-34).

While many of the website operators identified by MarkMonitor complied with take-down requests, certain website operators, including Defaulting Defendants, did not. (FAC, ¶¶ 20, 29, 33). Defaulting Defendants either continued to unlawfully distribute, reproduce, perform and otherwise exploit the Stolen Film on Defaulting Defendants' Sites, in violation of Lions Gate's exclusive rights, or would have continued such unlawful conduct but for the Preliminary Injunction. (*Id*., ¶ 34).

Defaulting Defendants' distribution, reproduction, performance, and exploitation of the Stolen Film has been without authorization and without Lions Gate's consent. (FAC, ¶ 36). Defaulting Defendants have acted with willful, malicious, and wanton disregard of Lions Gate's exclusive rights, and Lions Gate has sustained irreparable harm as a result thereof. (*Id*., ¶¶ 37, 42, 49, 58). Accordingly, Lions Gate has asserted claims against Defaulting Defendants for (1) Direct Federal Copyright Infringement (17 U.S.C. §§ 501, *et seq*.); (2) Contributory Federal Copyright Infringement (*Id*.) and (3) Vicarious Federal Copyright Infringement (*Id*.).

## III.   LEGAL ARGUMENT

### A.   Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has the affirmative duty to look into its jurisdiction over the subject matter and the parties." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.Supp.2d 1039, 1051 (N.D. Cal. 2010).

#### 1.   The Court Has Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this action. Under 28 U.S.C. §§ 1331 and 1338(a) respectively, district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States, and all civil actions arising under any Act of Congress relating to, *inter alia*, copyrights. As indicated above, Lions Gate has asserted three claims for copyright infringement, all

of which arise under federal laws (17 U.S.C. §§ 501, *et seq.*).  Accordingly, the Court may properly exercise jurisdiction over this matter pursuant to Sections 1331 and 1338(a).

### 2.    Defaulting Defendants are Subject to Personal Jurisdiction

Defaulting Defendants are subject to personal jurisdiction in this Court. "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long arm-statute permits the assertion of jurisdiction without violating federal due process." *Craigslist, supra*, 694 F.Supp.2d at 1053.  "Because California's long arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal due process are the same." *Ibid.* Accordingly, absent traditional bases for personal jurisdiction such as physical presence, domicile or consent, due process requires that nonresident defendants have certain "minimum contacts" with the forum state "such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Ninth Circuit has established a three-prong test for analyzing whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction:  "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see also Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) holding modified by *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006).

First, there is no doubt that Defaulting Defendants intentionally aimed their infringement actions at Lions Gate in this state where Lions Gate has its principal place of business (FAC, ¶ 5), and that they knew the brunt of the harm from their infringement would be felt by Lions Gate in California. *Panavision*, 141 F.3d at 1321-22 (personal jurisdiction existed over non-California defendant who engaged in a scheme to infringe California plaintiff's intellectual property rights on the Internet). Further, as more than 20,000 downloads of the Stolen Film occurred in the Los Angeles metropolitan area alone prior to the filing of Lions Gate's initial Complaint (Cho Decl., ¶ 7), it is also reasonable to conclude that Defaulting Defendants have consummated acts of infringement within California.

With respect to the second prong of the minimum contacts test, a plaintiff's claims must arise "out of the defendant's forum-related activities." *Panavision*, 141 at 1322. "In order to satisfy this requirement, the plaintiff must show that 'but for' the defendant's forum-related conduct, the injury would not have occurred." *Craigslist, supra*, 694 F.Supp.2d at 1053. Here, Defaulting Defendants' willful copyright infringement was intentionally directed at Lions Gate, a company headquartered in California, and the harm caused by Defaulting Defendants was felt in California. Accordingly, Lions Gate's claims arise out of Defaulting Defendants' forum-related contacts because the harm to Lions Gate would not have occurred but for Defaulting Defendants' actions.

"The third and final prong assesses the reasonableness of exercising jurisdiction over the defendant." *Id.* at 1054. "For jurisdiction to be reasonable, it must comport with 'fair play and substantial justice.'" *Ibid.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Here, there is nothing in the record to suggest that it would be inconvenient or otherwise unfair to require Defaulting Defendants to defend this action in this District. Thus, this factor supports the exercise of personal jurisdiction over Defaulting Defendants. Because all factors under the minimum

contacts test favor the exercise of personal jurisdiction, this Court may properly exercise personal jurisdiction over Defaulting Defendants.

### B.      **Standard for Default Judgments**

Under Federal Rule of Civil Procedure 55(b)(2), a party may apply to the court for entry of a default judgment.  "The district court's decision whether to enter a default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The Ninth Circuit has enumerated the following factors to consider in determining whether a default judgment is appropriate:  (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the policy favoring adjudication on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"In applying this discretionary standard, default judgments are more often granted than denied."  *PepsiCo v. Tiunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Ca. 1999).  "When reviewing a motion for default judgment, the Court must accept the well-pleaded allegations of the complaint relating to liability as true."  *Amini Innovation Corp. v. KTY Intern. Marketing*, 768 F.Supp.3d 1049, 1053 (C.D. Cal. 2011).

Further, under L.R. 55-1, a motion for default judgment must be accompanied by a declaration: (1) identifying when and against what party default was entered; (2) identifying the pleading to which default was entered; (3) stating whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (4) stating that the Servicemembers Civil Relief Act does not apply; and (5) stating that notice has been served on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2).  Lions Gate has complied with these requirements, and has served Defaulting Defendants with its motion and supporting documents even though it was

not required to do so under FRCP 55(b)(2). (Varas Decl. ¶¶ 2-5.) Further, as set forth in detail below, the *Eitel* factors all favor granting default judgment in favor of Lions Gate.

### 1. Lions Gate Will Be Prejudiced if Default Judgment Is Not Entered

As Defaulting Defendants have not appeared in this action, a default judgment is the only means available for compensating Lions Gate for Defaulting Defendants' unlawful conduct. *See Amini Innovation Corp. v. KTY Intern. Marketing*, 768 F.Supp.2d 1049, 1054 (C.D. Cal. 2011). If the Court does not enter a default judgment in favor of Lions Gate, Defaulting Defendants will be allowed to avoid liability by not responding to Lions Gate's claims and Lions Gate will be prejudiced.

### 2. Lions Gate's Claims Are Meritorious and Its Complaint Is Sufficient

Under the second and third *Eitel* factors, the Court must examine whether Lions Gate has pled facts sufficient to establish and succeed on its claims. As discussed in more detail below, Lions Gate's allegations in its First Amended Complaint sufficiently allege each of Lions Gate's meritorious claims.

#### a. Direct Copyright Infringement

To prevail on a claim for direct copyright infringement a plaintiff must prove: (1) that it is the legal or beneficial owner of a valid copyright; and (2) that the defendant violated at least one of the exclusive rights owned by the plaintiff as the legal or beneficial copyright holder. *See* 15 U.S.C. § 501(b); *see also A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1013 (9th Cir. 2001); *D.C. Comics v. Towle*, 989 F.Supp.2d 948, 961 (C.D. Cal. Feb. 7, 2013). Lions Gate has met this standard.

As to the first element, the First Amended Complaint alleges that the Film and the screenplay for the Film are the subjects of United States Copyright Registration Nos. PAu003734299 and PAu003704583, respectively, and that Lions Gate has been licensed the sole and exclusive right to distribute and exploit the Film in the United

States and throughout North America, including without limitation the exclusive right to exploit the Film by means of direct exhibition in theaters, by means of the Internet and in all home video media, among other rights.  (*Id*., ¶¶ 15-16).  Lions Gate's exclusive license establishes Lions Gate's ownership of the copyright in the Film for purposes of this action.  "[I]f a copyright owner grants an exclusive license of particular rights, only the exclusive licensee and not the original owner can sue for infringement of those rights." *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1170 (9th Cir. 2013); *see also* 17 U.S.C. § 501(b).

As to the second element, Lions Gate alleges that Defaulting Defendants have distributed and/or publicly performed the Stolen Film in its entirety, which is sufficient to establish a claim for direct copyright infringement under 17 U.S.C. § 501. *See A&M Records, Inc*., 239 F.3d at 1014 (users who make digital copies of copyrighted works available for others to download violate the exclusive distribution right); *see also Warner Bros. Entm't v. WTV Systems, Inc*., 824 F.Supp.2d 1003, 1008-1012 (C.D. Cal. 2011) (provider of unauthorized on demand movie streaming service violated performance right of copyright owners).

### b.  Contributory Copyright Infringement

To prevail on a claim for contributory copyright infringement a plaintiff must establish both ownership of a valid copyright (which Lions Gate has done, as discussed in the previous section) and that defendant intentionally induced, caused or materially contributed to direct infringement by others. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 930, 125 S. Ct. 2764, 2776, 162 L. Ed. 2d 781 (2005); *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).  Liability for contributory copyright infringement attaches to defendants with "actual knowledge and those who have reason to know of direct infringement." 357 F.3d at 1076. Lions Gate has established the elements required for contributory infringement as well.

Although Lions Gate has not in this lawsuit sought relief against end users who simply used torrent technology to download (and, by definition, upload) the Stolen

Film, the fact remains that their actions constitute copyright infringement, which establishes the "infringement by others" element required for a claim of contributory infringement. *See A&M Records, Inc.*, 239 F.3d at 1014. Lions Gate has also established that Defaulting Defendants knowingly induced, caused and/or materially contributed to these end users' infringement by deliberately providing files and/or links that served no purpose but to connect users to the "swarm" where the Stolen Film was being shared. (*See* FAC, ¶¶ 19-20, 28-33.) Furthermore, Lions Gate's demand letters to these Defaulting Defendants establish that Defaulting Defendants not only "should have known" that they were contributing to the infringement, but also had actual knowledge of the infringement. (*Id.*, ¶¶ 20, 29, 33.)

### c. Vicarious Copyright Infringement

To prevail on a claim for vicarious copyright infringement, a plaintiff must establish that a defendant has the right and ability to supervise the direct infringement that occurs on and through its website and also has a direct financial interest in the infringement. *A&M Records, Inc.*, 239 F.3d at 1023. Lions Gate has established both of these elements.

First, the Ninth Circuit has held that "financial benefit exists where the availability of infringing material 'acts as a "draw" for customers.'" *Id.* quoting *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263-64 (9th Cir. 1996). Given the high profile and intense level of anticipation that accompanied the Film and the massive levels of infringement that occurred since the initial theft there is no doubt that the Stolen Film acted as a "draw" that attracted users to Defaulting Defendants' Sites (where in many cases Defaulting Defendants reaped an additional financial benefit from paid advertisements) (FAC, ¶ 54.) Second, Defaulting Defendants had the right and ability to supervise the direct infringement that occurred on and through their websites because they had complete control over what content users could access through their websites. "The ability to block infringers' access to a particular

environment for any reason whatsoever is evidence of the right and ability to supervise." *A&M Records, Inc.*, 239 F.3d at 1023 citing *Fonovisa*, 76 F.3d at 262.

### 3.   The Sum of Money at Stake is Consistent with the Allegations of Harm in Lions Gate's Complaint

"The fourth *Eitel* factor examines the amount of money at stake in relation to the seriousness of a defendant's conduct." *Craigslist, supra,* 694 F.Supp.2d at 1060. "This requires that the court assess whether the recovery sought is proportional to the harm caused by the defendant's conduct." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F.Supp.2d 916, 921 (C.D. Cal. 2010). Lions Gate is seeking an award of statutory damages in the amount of $150,000 (one hundred fifty thousand dollars) against each of the three Defaulting Defendants. This represents the maximum statutory damages available against each Defaulting Defendant for willful infringement with respect to each of the two registrations alleged in Lions Gate's First Amended Complaint. *See* 17 U.S.C. § 504(c)(2).

"'Statutory damages are particularly appropriate in a case, such as this one in which the defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiff's actual damages.'" *Warner Bros. Entm't Inc. v. Caridi*, 346 F.Supp.2d 1068, 1074 (C.D. Cal. 2004), quoting *Jackson v. Sturkie*, 255 F.Supp.2d 1096, 1101 (N.D. Cal. 2003) (internal brackets omitted). A defendant's deliberate decision to default also justifies awarding a high magnitude of damages. *See Craigslist, supra,* 694 F.Supp.2d at 1060 (holding that this factor weighed in favor of default judgment where plaintiff asserted copyright, trademark breach of contract, and fraud claims and sought damages in the range of $1,177,827.07 to $4,900,327.07). Moreover, an award of the maximum statutory damages are appropriate where, as here, the defendant's conduct is "particularly egregious." *Warner Bros.*, 346 F.Supp.2d at 1074.

More specifically, courts assessing the appropriate amount of statutory damages consider:

(1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant."

*Microsoft Corp. v. Nop*, 549 F.Supp.2d 1233, 1237 (E.D. Cal. 2008).  Six of these seven factors strongly favor Lions Gate, and one either favors Lions Gate or is not applicable in this case.

Lions Gate submits that the "expenses saved and the profits reaped" element favors Lions Gate in this case because Defaulting Defendants' default has prevented Lions Gate from gathering evidence about the amount of profit Defaulting Defendants reaped from their infringement.  The "value of the copyright" element also favors Lions Gate's requested damages.  As discussed above, the worldwide theatrical box office revenues from the first two films in the "Expendables" series exceeded $575 million dollars ($575,000,000).

The "deterrent effect on others" element also favors Lions Gate because, as a producer of highly successful and sought-after motion pictures, Lions Gate is a target for other infringers who are likely to be dissuaded from trying to distribute unauthorized versions of Lions Gate's films if they know that such unlawful conduct will subject them to the maximum available statutory penalties.  The "innocent or willful" element favors Lions Gate because, accepting the allegations of the First Amended Complaint as true, there is no doubt that Defaulting Defendants willfully and unlawfully distributed the Stolen Film with the express purpose of damaging Lions Gate and infringing its rights.  The "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material" element favors Lions Gate because Defaulting Defendants chose to default rather than

cooperate by participating in discovery.  An award of the maximum statutory damages is also likely to discourage Defaulting Defendants from infringing Lions Gate's rights in the future.

Finally, Lions Gate submits that the second element (revenues lost by the plaintiff) is not applicable in this case because Defaulting Defendants stole and distributed the Stolen Film prior to its release, making it difficult or impossible to determine the real-world losses that Lions Gate suffered at the box office as a result of Defaulting Defendants' infringement.  To the extent the Court is inclined to consider this element at all, it also favors Lions Gate because Defaulting Defendants' decision to default prevented Lions Gate from obtaining evidence regarding the full scope and extent of their infringement, which would have been necessary for Lions Gate to attempt to reasonably estimate the revenue it lost as a result of Defaulting Defendants' infringement.

### 4.   There Is No Possibility of a Genuine Issue of Material Fact

"The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case." *Craigslist, supra,* 694 F.Supp.2d at 1060.  For purposes of this Motion, the allegations in Lions Gate's First Amended Complaint must be accepted as true. *Amini Innovation Corp.*, 768 F.Supp.3d at 1053. Moreover, if a genuine dispute existed, Defaulting Defendants could easily have appeared through counsel in this Court.  Accordingly, this factor favors the entry of default judgment. *Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).

### 5.   The Default Entered Against Defaulting Defendants did Not Result from Excusable Neglect

"The sixth *Eitel* factor considers whether defendant's default may have been the product of excusable neglect." *Landstar, supra,* 725 F.Supp.2d at 922.  Service was properly effected on all Defaulting Defendants.  (Dkt. No. 57-1.)  Under such circumstances, there is no chance that Defaulting Defendants' default was the result of

excusable neglect.  *See, e.g.*, *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 927 (9th Cir. 2004) (no excusable neglect where defendant had "actual notice of both the action and [plaintiff's] intent to pursue it" but failed to "file an extension or anything else with the district court[.]").

### 6.   The Policy Favoring Adjudication of Disputes on the Merits does Not Weigh Against Default Judgment

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment." *Craigslist, supra,* 694 F.Supp.2d at 1061.  Although "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel, supra,* 782 F.2d at 1472, "Rule 55(a) allows a court to decide a case before the merits are heard if defendant fails to appear and defend." *Landstar, supra,* 725 F.Supp.2d at 922.  Where a defendant's failure to appear "makes a decision on the merits impracticable if not impossible," entry of default judgment is warranted.  *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002).  As Defaulting Defendants have failed to appear or respond in this matter, a decision on the merits is impossible.  Lions Gate reiterates that if Defaulting Defendants wanted to obtain an adjudication on the merits, they could have appeared through counsel in this Court.  Accordingly this factor weighs in favor of a default judgment.

In sum, accepting all of the allegations in Lions Gate's First Amended Complaint as true, the factors articulated in *Eitel* militate in favor of granting a default judgment against Defaulting Defendants and Lions Gate's instant Motion should be granted in its entirety.

### C.   Lions Gate is Entitled to Its Requested Relief

#### 1.   Lions Gate is Entitled to Injunctive Relief

Lions Gate seeks injunctive relief to permanently enjoin Defaulting Defendants from distributing, reproducing, performing or otherwise exploiting the Film.  The requested injunction, which Lions Gate requested in both its original Complaint and

its First Amended Complaint, is both authorized by the relevant statutes and warranted under the facts of this case.  As set forth in detail above, Lions Gate has shown that it is entitled to judgment on each of its claims.  The Copyright Act authorizes a Court to grant injunctive relief.  *See* 17 U.S.C. § 502 (authorizing a court to grant injunctions "as it may deem reasonable to prevent or restrain infringement of a copyright").

A plaintiff is entitled to equitable injunctive relief when:  (1) the plaintiff has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391(2006).  When a defendant's "refusal to answer or appear . . . makes it difficult for plaintiff to prevent further infringement," the "traditional equitable principles established by *eBay Inc. v. MercExchange, LLC*…are satisfied and injunctive relief is warranted."  *Herman Miller, Inc. v. Alphaville Design, Inc.*, CV:08-3437, 2009 U.S. Dist. LEXIS 103384, at *22 (N.D. Cal. October 22, 2009); *see also Philip Morris*, 219 F.R.D. at 502 ("[I]njunctive relief is appropriate because the claims otherwise warrant an injunction, and Defendant, though well aware of serious claims brought against it, has chosen to ignore this lawsuit.  Failure to grant the injunction would needlessly expose the Plaintiff to the risk of continuing irreparable harm.").

Moreover, courts have continued to award injunctions as a matter of course in copyright infringement cases even after the *eBay* decision.  *See Warner Bros. Entm't. Inc. v. Paul Duhy*, CV:09-5798, 2009 U.S. Dist. LEXIS 123332, at *9 (C.D. Cal. Nov. 30, 2009) ("a showing of copyright infringement liability and the threat of future violations is sufficient to warrant a permanent injunction."); *Autodesk, Inc. v. Flores*, CV:10-11687, 2011 U.S. Dist. LEXIS 11687, at *18-19 (N.D. Cal. January 31, 2011) (copyright infringement is "presumed to give rise to irreparable harm for which there is no adequate remedy at law.").  Here, Lions Gate's injunction is narrowly tailored to

the specific harms shown in Lions Gate's Complaint.  Lions Gate is therefore entitled to a permanent injunction against Defaulting Defendants in the form included in the Proposed Default Judgment submitted herewith.

### 2.    Lions Gate is Entitled to Statutory Damages of $150,000 Against Each of Defaulting Defendants

Under the Copyright Act, a plaintiff "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1).  In cases of willful infringement, a court has discretion to award statutory damages of up to $150,000 for each infringed work.  17 U.S.C. § 504(c)(2).

In this case Lions Gate has elected, pursuant to 17 U.S.C. § 504(c), to recover an award of statutory damages severally against Defaulting Defendants, and respectfully requests that the Court award Lions Gate the maximum available statutory damages of $150,000 severally against each of Defaulting Defendants with respect to their infringement of Lions Gate's exclusive rights with respect to the screenplay protected by Copyright Registration No. PAu003704583 (*i.e.*, an award of $150,000 against Defendant Lim, an award of $150,000 against Defendant Ashraf and an award of $150,000 against Defendant Messchendorp).  As discussed above, such an award is consistent with Ninth Circuit law, given the willful and egregious nature of Defaulting Defendants' infringement, the value of the copyrights at issue, Defaulting Defendants' deliberate decision not to participate in this action, and the need to deter Defaulting Defendants and others who may target Lions Gate's invaluable assets and rights in the future.

### 3.    Lions Gate is Entitled to Attorneys' Fees and Costs

Finally, Lions Gate is entitled to an award of attorneys' fees and costs in pursuit of this action.  Attorneys' fees and costs are recoverable under both 17 U.S.C. §

504(a) and California Penal Code Section 502(e).  Attorneys' fees under the Copyright Act may be freely awarded to the prevailing party as long as it "seeks to promote the Copyright Act's objectives."  *Historical Research v. Cabral*, 80 F.3d 377, 378-79 (9th Cir. 1996), *citing Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34, 114 S. Ct. 1023, 127 L. Ed. 2d. 455 (1994)).  In this case, an award of attorneys' fees is appropriate to vindicate Lions Gate for the infringement of its exclusive rights in the Film.  Defaulting Defendants' deliberate and willful infringement of Lions Gate's rights has forced Lions Gate to incur attorneys' fees and related costs to protect its rights.  Pursuant to L.R. 55-3, Lions Gate seeks a joint and several award of attorneys' fees in the amount of $9,600 against each of Defaulting Defendants (representing $5,600 plus two percent of $200,000) as well as an award of costs to be evidenced in a bill of costs.

### 4.    Lions Gate is Entitled to Post Judgment Interest

Finally, Lions Gate also seeks post-judgment interest on the aggregate sum of statutory damages and attorneys' fees and costs awarded.  Pursuant to 28 U.S.C. § 1961(a), interest "shall be allowed on any money judgment in a civil case recovered in a district court."   Accordingly Lions Gate should be awarded post-judgment interest calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  *Id.*

//

//

//

//

//

//

//

//

## IV.   **CONCLUSION**

For the foregoing reasons, Lions Gate respectfully requests that the Court enter the Proposed Default Judgment against Defaulting Defendants submitted herewith.

Respectfully submitted,

KILPATRICK TOWNSEND &
STOCKTON LLP

Dated: December 9, 2015            By:   /s/ Dennis L. Wilson
                                            DENNIS L. WILSON

Attorneys for Plaintiff
Lions Gate Films Inc.

## PROOF OF SERVICE

I, Jessica Wilson, certify that on December 9, 2015, I served the following document:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF LIONS GATE FILMS INC.'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

upon the defendants by means of electronic delivery to the following email addresses:

swankshare@gmail.com

freshwap@hotmail.com

kof_javed@hotmail.com

quasi-mundo@hotmail.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_Jessica Wilson_

Jessica Wilson

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT – Case No. 2:14-cv-06033-MMM-AGR

-19-