1  KILPATRICK TOWNSEND & STOCKTON LLP
   LARRY W. MCFARLAND (State Bar No. 129668)
2  LMcFarland@kilpatricktownsend.com
   DENNIS L. WILSON (State Bar No. 155407)
3  DWilson@kilpatricktownsend.com
   CHRISTOPHER T. VARAS (State Bar No. 257080)
4  CVaras@kilpatricktownsend.com
   9720 Wilshire Blvd PH
5  Beverly Hills, CA  90212-2018
   Telephone:  310-248-3830
6  Facsimile:   310-860-0363

7
   Attorneys for Plaintiff
8  LIONS GATE FILMS INC.

9
                    UNITED STATES DISTRICT COURT
10
            FOR THE CENTRAL DISTRICT OF CALIFORNIA
11
                        WESTERN DIVISION
12

13 LIONS GATE FILMS INC.,                    Case No.: 2:14-cv-06033-MMM (AGRx)

14                 Plaintiff,                **DECLARATION OF CHRISTOPHER**
                                             **VARAS IN SUPPORT OF**
15            v.                             **PLAINTIFF LIONS GATE FILMS**
                                             **INC.'S MOTION FOR ENTRY OF**
16 AHMED SALEH, an individual; AMIEL         **DEFAULT JUDGMENT**
   ELBAR, an individual; MUHAMMAD
17 JAVED ASHRAF, an individual; TOM
   MESSCHENDORP, an individual;              Date:    February 22, 2016
18 JEROME GILLAN, an individual;             Time:    10:00 a.m.
   LUCAS LIM, an individual; and JOHN        Place:   Hon. Margaret M. Morrow
19 DOES 1-4, inclusive,                               Courtroom 780
                                                      Edward R. Roybal Courthouse
20                 Defendants.                        255 East Temple Street
                                                      Los Angeles, California 90012
21

22

23

24

25

26

27

28

1    I, Christopher Varas, under penalty of perjury and pursuant to 28 U.S.C. §
2    1746, declare and state as follows:

3         1.     I am an attorney with the law firm of Kilpatrick Townsend & Stockton
4    LLP, counsel to plaintiff Lions Gate Films Inc. ("Lions Gate") in this matter.  I have
5    personal knowledge of the facts stated herein and would testify competently thereto
6    if called upon to do so.

7         2.     Default against defendants Lucas Lim, Muhammad Javed Ashraf, and
8    Tom Messchendorp (collectively "Defaulting Defendants") was entered on
9    November 30, 2015.  (Dkt. No. 60.)  In each case, default was entered with respect
10   to Lions Gate's First Amended Complaint (Dkt. No. 45.)

11        3.     To the best of my knowledge none of the Defaulting Defendants are
12   infants or incompetent persons.

13        4.     To the best of my knowledge the Servicemembers Civil Relief Act does
14   not apply with respect to any of the Defaulting Defendants.

15        5.     Although notice of Lions Gate's motion is not required under Federal
16   Rule of Civil Procedure 55(b)(2), my office has served each of the Defaulting
17   Defendants with a copy of the motion and supporting documents at the electronic
18   mail addresses the Court authorized Lions Gate to use for service of process in this
19   case.

20        6.     Attached hereto as **Exhibit 1** is a true and correct copy of the
21   Declaration of Edward Cho in Support of Application for Temporary Restraining
22   Order and Order to Show Cause why a Preliminary Injunction Should Not Issue,
23   originally filed in this matter on August 1, 2014 and resubmitted without exhibits for
24   the Court's reference in support of the instant motion.

25   //
26   //
27   //
28   //

DECLARATION OF CHRISTOPHER VARAS                                      - 2 -
CASE NO. 2:14-CV-06033-MMM-AGR

1        7.    Attached hereto as **Exhibit 2** is a true and correct copy of the

2    Declaration of Robert Wenokur in Support of Application for Temporary

3    Restraining Order and Order to Show Cause why a Preliminary Injunction Should

4    Not Issue, originally filed in this matter on August 1, 2014 and resubmitted without

5    exhibits for the Court's reference in support of the instant motion.

6        I declare under penalty of perjury under the laws of the United States that the

7    foregoing is true and correct.

8    Executed this 9th day of December at Seattle, WA

9

10

11

12        Christopher Varas

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

KILPATRICK TOWNSEND & STOCKTON LLP
LARRY W. MCFARLAND (State Bar No. 129668)
LMcFarland@kilpatricktownsend.com
DENNIS L. WILSON (State Bar No. 155407)
DWilson@kilpatricktownsend.com
CHRISTOPHER T. VARAS (State Bar No. 257080)
CVaras@kilpatricktownsend.com
9720 Wilshire Blvd PH
Beverly Hills, CA 90212-2018
Telephone: 310-248-3830
Facsimile: 310-860-0363

JOSEPH PETERSEN (*pro hac vice* motion forthcoming)
JPetersen@kilpatricktownsend.com
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7703
Telephone: 212-775-8700
Facsimile: 212-775-8800

Attorneys for Plaintiff
LIONS GATE FILMS INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| LIONS GATE FILMS INC., <br><br> Plaintiff, <br><br> v. <br><br> JOHN DOES 1-10 inclusive, d/b/a, <limetorrents.com>, <billionuploads.com>, <hulkfile.eu> <played.to>, <swankshare.com> and <dotsemper.com>, *et al*. <br><br> Defendants. | **DECLARATION OF EDWARD CHO IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

I, Edward Cho, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declare and state as follows:

DECLARATION OF EDWARD CHO IN SUPPORT OF APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A
PRELIMINARY INJUNCTION SHOULD NOT ISSUE
- 1 -

Exhibit 1
4

1.    I am a Director of Global Operations at MarkMonitor, Inc. ("MarkMonitor"), a Thomson Reuters anti-piracy company focusing on, among other things, monitoring online websites and networks for infringing content.  In connection with my anti-piracy work at MarkMonitor I supervise, directly or indirectly, a team of approximately 100 specialists who focus their efforts on identifying and addressing piracy of a broad range of copyrighted works, including movies, music, software, games and e-books.

2.    The statements made in this declaration are based on my personal knowledge including on information provided to me by colleagues or other personnel working under my supervision.  If called to testify, I would testify as follows:

3.    In my duties as Director of Global Operations at MarkMonitor, I have recently overseen work that the company has done on behalf of Lions Gate Films Inc. ("Lions Gate") with respect to Lions Gate's forthcoming theatrical release *The Expendables III* (the "Film").

4.    On Thursday, July 24, 2014, I was informed by Lions Gate that a digital file containing a high quality reproduction of the Film had been stolen and uploaded to the Internet without Lions Gate's authorization or consent (the "Stolen Film").

5.    Starting that same day, Thursday, July 24, 2014, MarkMonitor employees acting under my supervision have conducted searches of the internet for unauthorized reproductions and distributions of the Film.

**DECLARATION OF EDWARD CHO IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

- 2 -

Exhibit 1
5

6.      According to our tracking software (which software I believe to be accurate), as of July 31, 2014, the Stolen Film has been downloaded at least 2.1 million times on peer-to-peer networks since the first unauthorized release (peer-to-peer networks are distinguished by the fact that the information available for access does not reside on a central server; rather, each computer in the peer-to-peer network makes information available to every other computer in the peer-to-peer network). Further, while our tracking software does not track downloads outside of peer-to-peer networks, the Stolen Film is also available on the Internet for downloading and streaming through websites that do not constitute peer-to-peer networks. I believe that it is safe to assume that hundreds of thousands if not millions of downloads and/or streams have taken place on such networks worldwide.

7.      Approximately 247,000 downloads, or slightly more than 11% of the total number of such downloads, have taken place to individuals based in the United States (again, these figures are limited to downloads through peer-to-peer networks and the number of downloads would undoubtedly be higher if it included downloads through non peer-to-peer sites). Of the number of such downloads to individuals in the United States, 21,000 have taken place to individuals based in the Los Angeles metropolitan area, *i.e.*, 8.5% of the peer-to-peer network downloads to individuals in the U.S. have taken place in or near Los Angeles, California.

**DECLARATION OF EDWARD CHO IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

- 3 -

Exhibit 1
6

8.     In response to the unauthorized reproduction of the Stolen Film, MarkMonitor began compiling information on the websites that were either hosting the Stolen Film or otherwise facilitating the distribution of the Stolen Film, such as through torrent websites (which, as discussed in more detail in Paragraph 10 herein, offer a protocol for allowing users who have downloaded a copy of a file to serve as a source from which other users can download that same file; the end result of torrent websites is the dramatic proliferation of unauthorized reproductions of copyrighted works such as the Stolen Film).

9.     Thereafter, MarkMonitor, on Lions Gate's behalf, began issuing take-down requests to the operators of the websites identified through our searches. MarkMonitor has sent approximately 2,770 take-down requests covering, cumulatively, 10,846 unique host URLs (since a single website often has multiple URLs hosting the Stolen Film we can and do request that the operator of a single website remove multiple unique host URLs).  In the vast majority of instances the recipients responded by taking down the Stolen Film and otherwise taking steps to avoid the piracy of the Stolen Film.

10.     However, in a limited number of instances the websites at issue refused to take down the Stolen Film and/or failed to take reasonable steps to prevent the further distribution of the Stolen Film.  This category of websites includes, without limitation, <limetorrents.com>, <billionuploads.com>, <hulkfile.eu>, <played.to>,

**DECLARATION OF EDWARD CHO IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

- 4 -

Exhibit 1
7

<swankshare.com>, and <dotsemper.com>, as discussed in more detail in the following paragraphs.

11. On July 25, 2014, MarkMonitor first became aware that the <limetorrents.com> website was disseminating the Stolen Film using the peer-to-peer filesharing "BitTorrent" protocol. Websites that use the BitTorrent protocol, including <limetorrents.com> host small files called "torrent" files. Each torrent file contains an instruction set including a unique "hash value" that allows the end user's client program to locate and connect to a group of other users (called a "swarm") who are all simultaneously sharing copies of, in the case of <limetorrents.com>, the Stolen Film with one another. By downloading one of these torrent files associated with the Stolen Film from <limetorrents.com>, users join a "swarm" where they download parts of the Stolen Film from many different users and also upload to other users parts of the Stolen Film they have already received, until eventually they have reproduced the entire Stolen Film on their own hard drives and, in most cases, have also uploaded all or a substantial part of the Stolen Film to others. Attached as Exhibit A are true and correct copies of representative screenshots of the <limetorrents.com> website captured by MarkMonitor on July 31, 2014.

12. On July 25, 2014, MarkMonitor first became aware that the <billionuploads.com> website was hosting copies of the Stolen Film in one or more directories where users could download copies of the Stolen Film directly to their

**DECLARATION OF EDWARD CHO IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** - 5 -

Exhibit 1
8

computers. Attached as Exhibit B are true and correct copies of representative screenshots of the <billionuploads.com> website, captured by MarkMonitor on July 31, 2014.

13. On July 25, 2014, MarkMonitor first became aware that the <swankshare.com> website was hosting copies of the Stolen Film in one or more directories where users could download copies of the Stolen Film directly to their computers. Attached as Exhibit C are true and correct copies of representative screenshots of the <swankshare.com> website, captured by MarkMonitor on July 31, 2014.

14. On July 25, 2014, MarkMonitor first became aware that the <hulkfile.eu> website was hosting copies of the Stolen Film in one or more directories where users who signed up for the website's service could download copies of the Stolen Film directly to their computers. Attached as Exhibit D are true and correct copies of representative screenshots of the <hulkfile.eu> website captured by MarkMonitor on July 31, 2014.

15. On July 25, 2014, MarkMonitor first became aware that the <played.to> website was hosting copies of the Stolen Film in one or more directories and displaying an embedded viewing window in which users could stream copies of the Stolen Film directly to their screens. Attached as Exhibit E are true and correct

**DECLARATION OF EDWARD CHO IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

- 6 -

Exhibit 1
9

copies of representative screenshots of the <played.to> website captured by MarkMonitor on July 31, 2014.

16.     On July 25, 2014, MarkMonitor first became aware that the <dotsemper.com> website was hosting copies of the Stolen Film in one or more directories where users can download copies of the Stolen Film directly to their computers and displaying an embedded viewing window in which users could stream copies of the Stolen Film directly to their screens.   Attached as Exhibit F are true and correct copies of representative screenshots of the <dotsemper.com > website captured by MarkMonitor on July 31, 2014.

17.     MarkMonitor, on Lions Gate's behalf, issued take-down requests to the operator of the <limetorrents.com> website on July 26, 30, and 31; operators of the <billionuploads.com> and <played.to> websites on July 25, 26, 27, 28, 29, 30, and 31; operator of the <hulkfile.eu> website on July 26, 27, 28, 29, 30, and 31; operator of the <swankshare.com> website on July 26, 30, and 31; and operator of the <dotsemper.com> website on July 26, 27, 28, 29, 30, and 31.  Attached as Exhibit G are true and correct copies of these takedown requests (MarkMonitor submitted take-down requests to three of the websites in question, <swankshare.com>, <dotsemper.com> and <limetorrents.com>, through an on-line submission form available through each of these websites; in order to maintain a record of the take-

**DECLARATION OF EDWARD CHO IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

- 7 -

Exhibit 1
10

down, MarkMonitor, consistent with its procedures, saved a copy to an internal e-mail address, viz., nomail@nomail.nomail.).

18.    To date, the operators of these six websites have not responded to our take-down requests.  Rather, as of July 31, 2014, torrent links on the <limetorrents.com> website allowed users to access "swarms" where the Stolen Film continued to be shared; links disseminating copies of the Stolen Film remained active on the <billionuploads.com>, <hulkfile.eu>, <swankshare.com>, and <dotsemper.com> websites; and users could still stream the Stolen Film on the <played.to> and <dotsemper.com> websites.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 1, 2014.

Edward Cho

**DECLARATION OF EDWARD CHO IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

- 8 -

Exhibit 1
11

# Exhibit 2

1  KILPATRICK TOWNSEND & STOCKTON LLP
2  LARRY W. MCFARLAND (State Bar No. 129668)
   LMcFarland@kilpatricktownsend.com
   DENNIS L. WILSON (State Bar No. 155407)
3  DWilson@kilpatricktownsend.com
   CHRISTOPHER T. VARAS (State Bar No. 257080)
4  CVaras@kilpatricktownsend.com
   9720 Wilshire Blvd PH
5  Beverly Hills, CA  90212-2018
   Telephone:  310-248-3830
6  Facsimile:   310-860-0363

7  JOSEPH PETERSEN (*pro hac vice* motion forthcoming)
   JPetersen@kilpatricktownsend.com
8  The Grace Building
   1114 Avenue of the Americas
9  New York, NY 10036-7703
   Telephone:  212-775-8700
10 Facsimile:  212-775-8800

11 Attorneys for Plaintiff
   LIONS GATE FILMS INC.
12

13            UNITED STATES DISTRICT COURT

14        FOR THE CENTRAL DISTRICT OF CALIFORNIA

15                 WESTERN DIVISION

16

17 LIONS GATE FILMS INC.

18            Plaintiff,                    DECLARATION OF ROBERT
                                            WENOKUR IN SUPPORT OF
19        v.                                APPLICATION FOR TEMPORARY
                                            RESTRAINING ORDER AND
20 JOHN DOES 1-10 inclusive,                ORDER TO SHOW CAUSE WHY A
                                            PRELIMINARY INJUNCTION
21            Defendants.                    SHOULD NOT ISSUE

22

23

24

25    I, Robert Wenokur, under penalty of perjury and pursuant to 28 U.S.C. §

26 1746, declare and state as follows:

27

28 **DECLARATION OF ROBERT WENOKUR IN SUPPORT OF APPLICATION FOR
   TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A
   PRELIMINARY INJUNCTION SHOULD NOT ISSUE**                          - 1 -

Exhibit 2
12

1.  I am the Executive Vice President, Worldwide Servicing, and Content Protection at Lions Gate Films Inc. ("Lions Gate").  I submit this declaration in support of Lions Gate's application for a temporary restraining order and for a preliminary injunction.

2.  The statements made in this declaration are based on my personal knowledge, information provided to me by colleagues or other personnel working under my supervision or, where noted, upon Lions Gate's business records.  If called to testify, I would testify as follows:

**My Background**

3.  I have worked in various capacities in the entertainment industry since 1986.  I joined Lions Gate as Vice President of Post Production in 2005.

4.  Since shortly after I joined Lions Gate, a large component of my job responsibilities have included supervising the company's efforts to prevent piracy of Lions Gate's entertainment properties.  In connection with my job responsibilities, I routinely work with outside vendors and consultants who specialize in combating online piracy of copyrighted content such as movies, music, software, games and e-books.  For example, in connection with my efforts to combat piracy of Lions Gate's entertainment properties, I often engage and work with MarkMonitor, Inc. ("MarkMonitor"), a Thomson Reuters anti-piracy company focusing on, among other things, monitoring online websites and networks for infringing content.

**DECLARATION OF ROBERT WENOKUR IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

- 2 -

Exhibit 2
13

**Lions Gate and The Film**

5.     Lions Gate, together with its various affiliates, is a leading global entertainment company.  As set forth in the Annual Report of Lions Gate's parent company, Lions Gate Entertainment Corp., in the last 15 years, Lions Gate and its predecessors and affiliates have distributed films that have earned 77 Academy Award® nominations, won 20 Academy Awards® and have been nominated and won numerous Golden Globe® Awards, Screen Actors Guild Awards®, BAFTA Awards and Spirit Awards.

6.     Most recently, the company has been focused on the impending release of the latest installment of the blockbuster "*The Expendables*" motion picture franchise, *The Expendables 3* (the "Film").  The Film is scheduled to be released on August 15, 2014, a little over two weeks away.  Its cast includes some of the largest stars in cinema, including Sylvester Stallone, Jason Statham, Arnold Schwarzenegger, Mel Gibson, Harrison Ford, Wesley Snipes, Dolph Lundgren and Antonio Banderas among many others.

7.     I understand, based upon company press releases and industry sources, that the first two films in this franchise, *The Expendables* and *The Expendables 2,* generated combined worldwide box office revenues of more than $575 million U.S. dollars.

**DECLARATION OF ROBERT WENOKUR IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

- 3 -

Exhibit 2
14

8.      Lions Gate has obtained the sole and exclusive right to distribute and exploit the Film in the United States and throughout North America.  Lions Gate's exclusive rights in the Film pursuant to this exclusive license include but are not limited to all rights in the United States and throughout North America to exploit the Film by means of direct exhibition in theaters and by means of the Internet, among other rights.  A true and correct copy of the agreement granting Lions Gate such rights is attached hereto as **Exhibit A** (portions of the agreement have been redacted to protect certain confidential information in the Agreement).

9.      The Film is the subject of a pending application for expedited registration with the United States Copyright Office, which has assigned the application Receipt No. 1-QVTXDT.  A true and correct copy of the application and request for special handing is attached hereto as **Exhibit B**.

10.      In addition, the screenplay for the Film is the subject of United States Copyright Registration No. PAu003704583, issued on July 10, 2013, which I understand is valid, subsisting and in full force and effect.  A true and correct copy of the registration certificate is attached hereto as **Exhibit C.**

11.      Given the success of the first two films, Lions Gate anticipates that the Film will be highly successful as well.  Accordingly, Lions Gate has invested millions of dollars in terms of acquiring distribution rights to the Film and millions more in connection with marketing and promoting the Film's release.

**DECLARATION OF ROBERT WENOKUR IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

- 4 -

Exhibit 2
15

12.     Lions Gate has planned and has already begun to execute an extensive marketing and publicity campaign for the Film including television, radio and print advertising and promotion.

13.     Lions Gate has not authorized anyone to distribute the Film within the United States or North America on the Internet or anywhere else prior to the planned release date.

**The Pre-Release Leak**

14.     As part of Lions Gate's customary anti-piracy efforts, the company retained outside vendors, including MarkMonitor, to identify and address as appropriate any potential or actual piracy relating to the Film.

15.     On or about July 24, 2014, Lions Gate learned that a digital file containing a high quality reproduction of the Film had been uploaded to the Internet without Lions Gate's authorization or consent.  While investigations are ongoing, Lions Gate has now come to believe that an individual unlawfully obtained a copy of the Film through fraudulent or otherwise unlawful means.  Simply put, this copy of the Film is believed by the company to have been stolen.

16.     It is my understanding that only a single digital file containing the Film was stolen, and that every copy of the Film alleged in this complaint (and every copy available anywhere on the Internet) originated from and is a reproduction of that single original digital file.

**DECLARATION OF ROBERT WENOKUR IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

- 5 -

Exhibit 2
16

17.     Even a single unauthorized leak of a film property such as the one at issue in this action can have immediate and severe adverse consequences to film distribution companies such as Lions Gate.  Digital technology enables exact duplication of copyrighted content at the mere press of a computer keypad or mouse. Accordingly, from a single digital copy of a work thousands upon thousands of near exact copies of the work can proliferate seemingly if not literally overnight.  Indeed, only days after the leak at issue was detected copies of the Film in its entirety were available on literally hundreds of websites and my understanding based on information provided to me by MarkMonitor is that as of today the Film has been downloaded more than 2.2 million times.

18.     Given the seriousness of the threat posed by the leak of the Film, my team immediately instructed MarkMonitor to devote substantial resources to cataloging all websites and online services offering pirated copies of the Film. Further, we instructed MarkMonitor to follow up with take-down requests to the operators of the sites in question.  While many of the sites in question complied with take-down requests, certain sites, including those which are the subject of this action, did not.  The accompanying declaration of Edward Cho, MarkMonitor's Director of Global Operations, explains in detail the manner in which the defendants in this action continue to infringe or aid in the infringement of the copyrights in the Film and underlying screenplay and therefore jeopardize the successful launch and

**DECLARATION OF ROBERT WENOKUR IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

- 6 -

Exhibit 2
17

commercialization of an entertainment product in which Lions Gate has already invested millions of dollars.

**Irreparable Harm**

19.     The unlawful leak of the Film has caused Lions Gate, as the exclusive licensee of the copyright in the Film, irreparable harm.  In distributing and/or aiding the distribution of the Film before its theatrical release the defendants have unlawfully usurped the benefits of first publication that rightfully belong to Lions Gate.

20.     The unlawful distributions impair the marketability of the Film because they provide consumers with an opportunity to view the Film *in its entirety for free before its theatrical release*.  Individuals who view the Film in this manner may not pay for tickets at the box office when the Film is released.  Similarly, such individuals may not purchase or rent copies of the Film when it is released to the home entertainment market after its theatrical run.

21.     Further, the pre-release unlawful distributions impair Lions Gate's ability to control the publicity surrounding the Film.  Lions Gate planned for discussions concerning the Film to coincide with the theatrical release of the Film on August 15, 2014.  Now, many news articles are reporting on the Film weeks before the release and are doing so with reference to the leak and not, as we hoped, with

**DECLARATION OF ROBERT WENOKUR IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

- 7 -

Exhibit 2
18

respect to the content of the Film.  True and correct copies of some of the recent press attention garnered by the leak are attached hereto as **Exhibit D**.

22.    Finally, the pre-release unlawful distributions impair Lions Gate's relationships with its licensees including theater operators.  Specifically, Lions Gate has negotiated licenses with theater operators to exhibit the Film in theaters.  Lionsgate relies on the royalties from these licenses to stay in business, just as its licensees rely on ticket sales to stay in business.

23.    The leak of the Film at this time threatens to irreparably harm Lions Gate's relationships with its licensees and with potential customers.  Those relationships depend on Lionsgate's ability to control when, where and under what conditions the Film is distributed and yet defendants, through their unlawful conduct, are serving to determine when and how the Film is distributed.

24.    The harms set forth above cannot be adequately compensated by monetary damages.

25.    For all these reasons, Lions Gate has been and will continue to be irreparably harmed by the continued unlawful reproduction and distribution of the Film by the defendants.  As such, Lions Gate respectfully requests that this Court issue a temporary restraining order and preliminary injunction restraining defendants from continuing their unlawful conduct.

**DECLARATION OF ROBERT WENOKUR IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

- 8 -

Exhibit 2
19

1        I declare under penalty of perjury that the foregoing is true and correct.

2  Executed on August 1, 2014.

3

4                                   Robert Wenokur

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF ROBERT WENOKUR IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

- 9 -

Exhibit 2
20

PROOF OF SERVICE

I, Jessica Wilson, certify that on December 9, 2015, I served the following document:

**DECLARATION OF CHRISTOPHER VARAS IN SUPPORT OF PLAINTIFF LIONS GATE FILMS INC.'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

upon the defendants by means of electronic delivery to the following email addresses:

swankshare@gmail.com

freshwap@hotmail.com

kof_javed@hotmail.com

quasi-mundo@hotmail.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____

Jessica Wilson